# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### January 8, 2003 Session

# DEE ANN CURTIS GALLAHER v. CURTIS J. ELAM

**Appeal by Permission from the Court of Appeals**
**Juvenile Court for Knox County**
**No. B-3443     Carey E. Garrett, Judge**

---

**No. E2000-02719-SC-R11-CV - Filed May 2, 2003**

---

In this appeal, the appellant challenges the constitutionality of the Tennessee Department of Human Services Child Support Guidelines ("the Guidelines"). The Court of Appeals upheld the trial court's determination that chapter 1240-2-4-.03(4) of the Guidelines violates the equal protection provisions of the federal and state constitutions. We granted permission to appeal. After careful consideration, we conclude that: (1) chapter 1240-2-4-.03(4) of the Guidelines, which prohibits consideration of non-court-ordered child support in calculating child support, and chapter 1240-2-4-.03(2) of the Guidelines, which requires consideration only of the obligor's income in calculating child support, do not violate the equal protection and due process provisions of either the United States or Tennessee Constitutions; and (2) the promulgation of the Guidelines does not constitute an impermissible delegation of rulemaking authority by the General Assembly to the Department of Human Services. We reverse the judgment of the Court of Appeals and remand the cause for proceedings consistent with this opinion.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Wayne Decatur Wykoff and Judith A. DePrisco, Knoxville, Tennessee, for the Petitioner-Appellant, Dee Ann Curtis Gallaher.

L. Caesar Stair III and Margo J. Maxwell, Knoxville, Tennessee, for the Respondent-Appellee, Curtis J. Elam.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Stuart F. Wilson-Patton, Assistant Attorney General, Nashville, Tennessee, for the Intervenor, State of Tennessee.

**OPINION**

## I. Factual and Procedural Background

This appeal arises out of an award of child support to Dee Ann Curtis Gallaher ("Ms. Gallaher") for the benefit of Jacob Dylan Gallaher ("Jacob"), who was born on August 25, 1993. Jacob's birth was the result of an affair between Ms. Gallaher and Dr. Curtis J. Elam ("Dr. Elam"). Dr. Elam was married at the time of his romantic relationship with Ms. Gallaher and has remained married. Dr. Elam has three children of the marriage, all of whom were minors at the time of Jacob's birth.[1]

In January 1994, Ms. Gallaher filed a petition to establish Jacob's paternity in the Knox County Juvenile Court. In her petition, Ms. Gallaher identified Dr. Elam as Jacob's father. Dr. Elam requested blood tests, which showed a 99.76% probability that he is Jacob's biological father. An Agreed Judgment was entered on December 27, 1994, declaring Dr. Elam to be the father of Jacob and setting support for the child.

On March 21, 1996, Ms. Gallaher filed a Petition for Contempt against Dr. Elam alleging his failure to comply with the Agreed Judgment. She also requested an increase in child support. In response, Dr. Elam challenged the constitutionality of the Tennessee Department of Human Services Child Support Guidelines. The Attorney General was properly notified of Dr. Elam's constitutional challenge.

The Knox County juvenile court held that chapter 1240-2-4-.03(4) of the Guidelines violates the equal protection provisions of the state and federal constitutions. It also held that the Guidelines violate due process and were issued pursuant to an unconstitutional delegation of legislative authority. The court set child support based upon Ms. Gallaher's monthly expenses for Jacob. Ms. Gallaher and the State of Tennessee appealed.

A majority of the Court of Appeals agreed that chapter 1240-2-4-.03(4) of the Guidelines violates the equal protection provisions of the federal and state constitutions. The Court of Appeals did not reach the due process and separation of powers issues addressed by the trial court. Judge Herschel P. Franks dissented, stating that he would reverse the trial court's decision and enter judgment in accordance with the Guidelines. We granted review.

## II. Standard of Review

In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional. See State v. Robinson, 29 S.W.3d 476, 479 (Tenn. 2000); Riggs v. Burson, 941 S.W.2d 44, 51 (Tenn. 1997). We must "indulge every presumption and resolve every doubt in favor of the statute's constitutionality." State v. Taylor, 70 S.W.3d 717, 721 (Tenn.

---

[1]At least two of Dr. Elam's children have now reached the age of majority.

2002); see also Riggs, 941 S.W.2d at 51; In re Burson, 909 S.W.2d 768, 775 (Tenn. 1995). This presumption applies with even greater force when the facial constitutional validity of a statute is challenged. See In re Burson, 909 S.W.2d at 775.

The Guidelines have been held to have the force and effect of a legislative mandate. See Nash v. Mulle, 846 S.W.2d 803, 804 (Tenn. 1993). Therefore, our analysis must begin with the presumption that the Guidelines and the statutes that permit their promulgation are constitutional. Due to the strong presumption that acts of the General Assembly are constitutional, the party attacking the constitutionality of a statute "must bear a heavy burden in establishing some constitutional infirmity of the Act in question." West v. Tenn. Hous. Dev. Agency, 512 S.W.2d 275, 279 (Tenn. 1974). Because this appeal presents questions of law, our review is de novo with no presumption of correctness given to the judgments of the lower courts. See Robinson, 29 S.W.3d at 480.

### III. Analysis

### A. Equal Protection

We have recognized that both the United States and Tennessee Constitutions guarantee citizens the equal protection of the laws. See, e.g., Robinson, 29 S.W.3d at 480. We have also recognized that article I, section 8 and article XI, section 8 of the Tennessee Constitution confer "essentially the same protection" as the Fourteenth Amendment to the United States Constitution, despite the historical and linguistic differences between the equal protection provisions. State v. Tester, 879 S.W.2d 823, 827 (Tenn. 1994) (quoting Tenn. Small Sch. Sys. v. McWherter, 851 S.W.2d 139, 152 (Tenn. 1993)). Consequently, this Court has adopted an analytical framework similar to that used by the United States Supreme Court in analyzing equal protection challenges. See Robinson, 29 S.W.3d at 481. Under this framework, one of three standards of scrutiny applies, depending upon the nature of the right asserted or the class of persons affected: (1) strict scrutiny; (2) heightened scrutiny; or (3) reduced scrutiny, applying the rational basis test. See id. Strict scrutiny applies when the classification at issue: (1) operates to the peculiar disadvantage of a suspect class; or (2) interferes with the exercise of a fundamental right. See id.

### 1. Deduction of Court-Ordered Support: Chapter 1240-2-4-.03(4)

Chapter 1240-2-4-.03(4) of the Guidelines provides that the amount of child support ordered pursuant to a previous order of child support for other children may be deducted in determining an obligor's net income.[2] However,

---

[2]In this opinion, we use the terms "obligor" and "obligee" as defined in section 1240-2-4-.03(1) of the Guidelines: "For clarity, the parent with whom the child(ren) live primarily will be referred to as the obligee and the parent with whom the child(ren) do not primarily live will be referred to as the obligor."

[c]hildren of the obligor who are not included in a decree of child support shall not be considered for the purpose of reducing the obligor's net income or in calculating the guideline amount. In addition, these children should not be considered by the court as a reason for deviation unless they meet the requirements of Rule 1240-2-4-.04(4).

Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(4). Chapter 1240-2-4-.04(4) allows deviation from the Guidelines as follows:

In instances of extreme economic hardship, such as cases involving extraordinary medical needs not covered by insurance or other extraordinary special needs for the child(ren) of the obligor's current family, [child(ren) living in the home with the obligor for whom the obligor is legally responsible] deviation from the guidelines may be considered in order to achieve equity between the parties when the court so finds.

The legislative classification Dr. Elam challenges is the class of obligors who have children for whom there are no orders of support. Dr. Elam argues that strict scrutiny should apply to this classification. We disagree. The strict scrutiny standard does not apply, as it neither operates to the peculiar disadvantage of a suspect class nor interferes with the exercise of a fundamental right.

A suspect class is one that has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian process." Robinson, 29 S.W.3d at 481 (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973)). The class of obligors Dr. Elam challenges fails to meet this definition and, therefore, is not a suspect class.

Chapter 1240-2-4-.03(4) of the Guidelines also does not impermissibly interfere with a fundamental right. We have recognized that a parent has a fundamental right to the care and custody of his or her children. See Keisling v. Keisling, 92 S.W.3d 374, 378 (Tenn. 2002); Hawk v. Hawk, 855 S.W.2d 573, 578 (Tenn. 1993). This interest, however, is distinct from the duty to support a child. In Tennessee, support obligations are mandatory, and a parent may be criminally prosecuted for failure to support. See Tenn. Code Ann. §§ 34-1-102 (2001 & Supp. 2002); 39-15-101 (1997 and Supp. 2002). Allocating a certain amount of financial support to one's children is a mandatory obligation, not a fundamental right. As such, parents have no fundamental right to allocate support to their children as they see fit.

Under chapter 1240-2-4-.03(4) of the Guidelines, the calculation of Dr. Elam's financial support for Jacob does not include consideration of the children living in his household because they are not subject to orders of support. This calculation, however, implicates only Dr. Elam's duty to support his children and does not infringe upon Dr. Elam's right to be a parent or to have a

relationship with any of his children. Consequently, we cannot apply strict scrutiny to this equal protection challenge.

Heightened scrutiny is also inapplicable to Dr. Elam's equal protection challenge. Heightened scrutiny applies only to legislative classifications involving a quasi-suspect class, such as gender or illegitimacy. See Nat'l Gas Distribs. v. Sevier County Util. Dist., 7 S.W.3d 41, 45 (Tenn. Ct. App. 1999) (citing Craig v. Boren, 429 U.S. 190, 198-99 (1976)). The class of obligors who have children for whom there are no orders of support is not a quasi-suspect class. Thus, we must use the rational basis test to analyze Dr. Elam's equal protection challenge.

The equal protection provisions of the federal and state constitutions demand that persons similarly situated be treated alike. See Tenn. Small Sch. Sys. v. McWherter, 851 S.W.2d 139, 153 (Tenn. 1993). When applying the rational basis test, we have observed that state legislatures have the initial discretion to determine what is "different" and what is "the same" and that they are given considerable latitude in making those determinations. See Robinson, 29 S.W.3d at 480 (citing Tenn. Small Sch. Sys., 851 S.W.2d at 153). Our inquiry into legislative choice usually is limited to whether the challenged classifications have a reasonable relationship to a legitimate state interest. See id. We have held that under the rational basis test, a statute may discriminate in favor of a certain class, as long as the discrimination is founded upon a reasonable distinction or difference in state policy. See Castlewood, Inc. v. Anderson County, 969 S.W.2d 908, 910 (Tenn. 1998).

Chapter 1240-2-4-.03(4) of the Guidelines treats obligors who have children for whom there are no orders of support differently from obligors who have children subject to court-ordered support. It is not necessary that the legislature state a rational basis for this differential treatment. A classification will pass constitutional muster if we can conceive of some rational basis for the distinction. See Riggs, 941 S.W.2d at 53 (stating that a statutory classification is rational "if any state of facts may reasonably be conceived to justify it").

Chapter 1240-2-4-.03(4) of the Guidelines is designed to ensure that the voluntary acts of obligors (e.g., choosing to have additional children) do not reduce their existing court-ordered child support obligations. It is rational to require obligors to be under a court order to support their children before those children can be considered in calculating the amount of support for another child because such a requirement ensures that the obligor is legally liable for the amount of child support claimed as a deduction. Furthermore, the obligor's children who are not receiving support pursuant to a court order and who live with the obligor inherently benefit from the obligor's household expenditures. Children who do not live with the obligor do not enjoy this benefit. Thus, both policy and fact justify the classification at issue. Moreover, the trial court is not flatly prohibited from considering non-court-ordered support. Chapter 1240-2-4-.04(4) of the Guidelines provides that courts may deviate from the Guidelines in cases of "extreme economic hardship." We conclude that the state has a rational, legitimate interest in requiring obligors to be under a court order to support their children before these children may be considered in calculating the amount of support for another child. Because the classification used in chapter 1240-2-4-.03(4) of the Guidelines passes the rational basis test, Dr. Elam's equal protection challenge fails.

## 2. Calculation of Support: Chapter 1240-2-4-.03(2)

Chapter 1240-2-4-.03(2) provides the method for calculating child support. The calculation is based solely upon the obligor's income. The income of the obligee is not considered in the initial calculation. In Gray v. Gray, 78 S.W.3d 881, 884 (Tenn. 2002), we held that a comparative analysis of the parties' incomes was inappropriate under the Guidelines. We now hold that the use of our state's formula for computing child support, which is based solely upon a percentage of the obligor's income, does not result in any constitutional violation per se.

We have previously determined that the manner in which child support is allocated does not implicate a fundamental right. Additionally, we have concluded that obligors are not members of a suspect class. Because no fundamental right is implicated and no suspect class is involved, the rational basis test applies to this equal protection challenge. Although the Guidelines rely solely upon the obligor's income in calculating child support, the Guidelines presume "that the obligee will be expending at least an equal percentage of net income as that of the obligor for the support of the children for whom support is sought." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(2). There is nothing irrational about this presumption. Furthermore, the Guidelines provide only a rebuttable presumption of support. The Guidelines permit deviation from the amount calculated if a court finds sufficient evidence to rebut the presumption in the Guidelines and makes specific findings of fact to support the deviation, and if the deviation is in the best interests of the child. See, e.g., Tenn. Comp. R. & Regs. ch. 1240-2-4-.02(7); see also Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(4); Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(2) and (4). Thus, we hold that Dr. Elam's right to equal protection is not implicated by the application of chapter 1240-2-4-.03(2) of the Guidelines.

## B. Due Process

The United States Constitution prohibits any state from depriving "any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Article I, section 8 of the Tennessee Constitution states, "no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land." We have held that this provision of the Tennessee Constitution is synonymous with the due process clause of the Fourteenth Amendment to the United States Constitution. See Riggs, 941 S.W.2d at 51. Accordingly, "unless a fundamental right is implicated, a statute comports with substantive due process if it bears 'a reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.'" Id. (quoting Newton v. Cox, 878 S.W.2d 105, 110 (Tenn. 1994)).

We have previously determined that chapters 1240-2-4-.03(4) and 1240-2-4-.03(2) of the Guidelines do not interfere with the exercise of a fundamental right. Because no fundamental right is implicated, our next inquiry is whether the regulations bear "a reasonable relation to a proper legislative purpose" and are "neither arbitrary nor discriminatory." Newton, 878 S.W.2d at 110.

We apply a rational basis test to determine whether a statute or regulation bears a reasonable relation to a proper legislative purpose. See Riggs, 941 S.W.2d at 51. We have determined that it is rational for the legislature to require obligors to be under a court order to support their children before those children are considered in calculating the amount of support for another child. It also is rational for the legislature to require that only the obligor's net income shall be considered in calculating child support.

We must also consider whether chapters 1240-2-4-.03(4) and 1240-2-4-.03(2) of the Guidelines are either arbitrary or discriminatory. See id. All obligors are required to pay child support based upon a percentage of their net income and the number of children for whom the obligor owes court-ordered support. We conclude that these regulations are neither arbitrary nor discriminatory because they apply in the same manner to similarly situated obligors. Therefore, Dr. Elam's due process challenge fails.

C. Separation of Powers

The separation of powers doctrine, as set forth in article II, sections 1 and 2 of the Tennessee Constitution, "is a fundamental principle of American constitutional government." Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975). Article II, section 1 of the Tennessee Constitution provides: "The powers of the government shall be divided into three distinct departments: legislative, executive, and judicial." Article II, section 2 requires that "[n]o person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." However, we have observed that the doctrine of separation of powers is not absolute. See State v. King, 973 S.W.2d 586, 588 (Tenn. 1998). Instead, the functions of the three branches of government often overlap. See id.

Article II, section 3 of the Tennessee Constitution vests the state's legislative power in the General Assembly. In general, "legislative power" is "the authority to make, order, and repeal law." Id. The General Assembly may not delegate power that is "purely legislative." State v. Edwards, 572 S.W.2d 917, 919 (Tenn. 1978); see also Chattanooga-Hamilton County Hosp. Auth. v. Chattanooga, 580 S.W.2d 322, 328 (Tenn. 1979). Therefore, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be. See Dep't of Pub. Welfare v. Nat'l Help "U" Ass'n, 270 S.W.2d 337, 339 (Tenn. 1954). However, the General Assembly may delegate to an administrative agency the authority to implement the expressed policy of particular statutes. See Edwards, 572 S.W.2d at 919. A grant of such authority may include the power to promulgate rules and regulations that have the effect of law in the agency's area of operation. See Bean v. McWherter, 953 S.W.2d 197, 199 (Tenn. 1997). Because the enactment of reasonable rules and regulations is administrative in character, it does not amount to the exercise of a legislative function, despite the agency's exercise of discretion. See Tasco Developing & Bldg. Corp. v. Long, 368 S.W.2d 65, 68-69 (Tenn. 1963); see also INS v. Chadha, 462 U.S. 919, 953 n.16 (1983) (noting that rulemaking by administrative agencies resembles lawmaking).

The test for determining whether a legislature's delegation of power to an administrative agency is unconstitutional is "whether the statute contains sufficient standards or guidelines to enable both the agency and the courts to determine if the agency is carrying out the legislature's intent." Bean, 953 S.W.2d at 199. Tennessee Code Annotated section 71-1-132(a)(1) delegates certain authority to the Tennessee Department of Human Services ("DHS"):

> [DHS] shall have rulemaking authority to establish any rules necessary for the administration of the child support program operated pursuant to Title IV-D of the Social Security Act and shall have rulemaking authority to establish any rules to carry out the requirements of any title or part of any title which the department administers and which are necessary to implement the provisions of the Title IV-D child support program and to effectuate any federal legislative or regulatory changes.

This statute requires DHS to establish rules consistent with federal law. Federal law enacted pursuant to Title IV-D of the Social Security Act requires that state child support guidelines meet certain specific standards. See 45 C.F.R. § 302.56 (2001).[3] The Guidelines incorporate the

---

[3] For example, under 45 C.F.R. § 302.56, state child support guidelines must, at a minimum

>(c)(1) Take into consideration all earnings and income of the noncustodial parent;

>(2) Be based on specific descriptive and numeric criteria and result in a computation of the support obligation; and

>(3) Provide for the child(ren)'s health care needs, through health insurance coverage or other means.

>. . . .

>(f) Effective October 13, 1989, the State must provide that there shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of the guidelines established under paragraph (a) of this section is the correct amount of child support to be awarded.

>(g) A written finding or specific finding on the record of a judicial or administrative proceeding for the award of child support that the application of the guidelines established under paragraph (a) of this section would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case, as determined under criteria established by the State. Such criteria must take into consideration the best interests of the child. Findings that rebut the guidelines shall state the amount of support that would have been required under the guidelines and include a justification of why the order varies from the guidelines.

>(h) As part of the review of a State's guidelines required under paragraph (e) of this

(continued...)

standards required under federal law. Because the standards set forth in the Guidelines are consistent with the requirements of federal law, it is apparent that DHS is carrying out the legislature's intent. Thus, we hold that the General Assembly's delegation of power to DHS is constitutional.

## IV. Conclusion

For the foregoing reasons, we hold that: (1) chapters 1240-2-4-.03(4) and 1240-2-4-.03(2) of the Guidelines do not violate the equal protection and due process provisions of either the United States or Tennessee Constitutions; and (2) the promulgation of the Guidelines does not constitute an impermissible delegation of rulemaking authority by the General Assembly to the Department of Human Services. The judgment of the Court of Appeals is reversed, and the cause is remanded for proceedings consistent with this opinion. On remand, the trial court should set support for Jacob according to the Guidelines, retroactive to the date that modification was originally sought, and should award attorneys fees to Ms. Gallaher at both the trial and appellate levels. Costs of this appeal are taxed to Dr. Curtis J. Elam and his surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

---

[3](...continued)
section, a State must consider economic data on the cost of raising children and analyze case data, gathered through sampling or other methods, on the application of, and deviations from, the guidelines. The analysis of the data must be used in the State's review of the guidelines to ensure that deviations from the guidelines are limited.