91 P.3d 1092

**CHILD SUPPORT ENFORCEMENT AGENCY, State of Hawai'i, Petitioner–Appellee,**

v.

**John DOE, Respondent–Appellant,**

and

**Jane Doe, Respondent–Appellee,**

and

**Richard Roe, Respondent.**

No. 25397.

Intermediate Court of Appeals of Hawai'i.

April 28, 2004.

Certiorari Denied June 7, 2004.

As Amended July 2, 2004.

Stephen T. Hioki, Honolulu, on the briefs, for Respondent–Appellant.

Rosemary McShane and Trina Yamada, Deputies Corporation Counsel, City and County of Honolulu, on the briefs, for Petitioner–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Respondent–Appellant John Doe (John Doe) appeals from a September 4, 2002 Judgment of Paternity (Judgment) entered in the Family Court of the First Circuit on September 4, 2002, Judge William J. Nagle presiding. The Judgment decided that John Doe is the biological father of an infant minor child (Child), awarded physical and legal custody of Child to her mother (Mother), decided that John Doe and Mother both owe a duty of support to Child, ordered John Doe to pay $192 to the Child Support Enforcement Agency for genetic testing, and ordered John Doe to make child support payments of $550 per month to Mother starting in October 2002, plus an additional $25 per month until the amount of $2200, which is the total of the child support owed for May, June, July, and August 2002, is paid. We affirm.

## RELEVANT STATUTES

Hawaii Revised Statutes (HRS) § 576D–7 (1993) requires the family court to establish and follow specific guidelines in determining child support orders and lists several factors that the judge may consider in determining whether a child support order should be modified.

**§ 576D–7 Guidelines in establishing amount of child support.** (a) The family court, in consultation with the agency, shall establish guidelines to establish the amount of child support when an order for support is sought or being modified under this chapter. The guidelines shall be based on specific descriptive and numeric criteria and result in a computation of the support obligation.

The guidelines may include consideration of the following:

(1) All earnings, income, and resources of both parents; provided that earnings be the net amount, after deduction for taxes, and social security.

Overtime and cost of living allowance may be deducted where appropriate;

(2) The earning potential, reasonable necessities, and borrowing capacity of both parents;

(3) The needs of the child for whom support is sought;

(4) The amount of public assistance which would be paid for the child under the full standard of need as established by the department;

(5) The existence of other dependents of the obligor parent;

. . .

(7) To balance the standard of living of both parents and child and avoid placing any below the poverty level whenever possible;

(8) To avoid extreme and inequitable changes in either parent's income depending on custody; and

(9) If any obligee parent (with a school age child or children in school), who is mentally and physically able to work, remains at home and does not work, thirty (or less) hours of weekly earnings at the minimum wage may be imputed to that parent's income.

(b) The guidelines shall be:

(1) Applied statewide;

(2) To simplify the calculations as much as practicable;

(3) Applied to ensure, at a minimum that the child for whom support is sought benefits from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor parent[.]

## RELEVANT CHILD SUPPORT GUIDELINES

The currently applicable guidelines are the 1998 Amended Child Support Guidelines (1998 ACSG). Prior to that, the 1994 Amended Child Support Guidelines (1994 ACSG) were applicable.

Under both the 1994 ACSG and the 1998 ACSG, the court calculates the amount of primary child support (PCS), the amount of the Standard of Living Allowance (SOLA), the amount of the child support payable, and then determines whether exceptional circumstances warrant an increase or decrease of the amount of the child support payable.

The 1994 ACSG noted, in relevant part, that

[t]he underlying principles are as follows:

1. Parents are entitled to keep sufficient income for their most basic needs and to facilitate continued employment.

2. Until the basic needs of children are met, parents may not retain any more income than required to provide the bare necessities for their own self-support.

Under the 1994 ACSG, calculations included the following:

Line 2. Determine each parent's net income less self-support:

. . . .

*Explanation:* Primary child support obligations will be determined on the basis of *net* income, allowing deductions for taxes (based on 1994 federal and state employer withholding for a single taxpayer with one exemption) and social security. In addition, the base net self support need for each parent is established at $574, based on the 1994 Federal Poverty Level need of $706 gross income for minimum food, clothing, shelter,. and other essential needs. . . .

Line 7. Fill in the number of children. The primary child support need of each child is $250/mo.

. . . .

Line 12. Determine the non-custodial parent's SOLA income from the Income Table.

. . . .

Line 15. **Subtract** the *Total Primary Child Support Need (Line 9)* owed by the non-custodial parent to other children, whether by a previous court order or a non-adjudicated legal obligation (including children residing in the obligor's household). The maximum that may be subtracted is the lesser of the actual court-ordered amount or the total pri-

mary child support need calculated according to the instructions (line 7).

Line 16. . . . .

*Explanations:* Because of the tax rate structure established by the Tax Reform Act of 1986 and the variety of available tax deductions, fair SOLA percentages can be established only on the basis of gross income minus minimum self-support, including taxes. . . . The minimum level of self-support is established at $706, based on the 1994 Federal Poverty Level. The Income Table reflects SOLA income as gross income less the minimum gross self-support.

Primary support owed to the subject children and to other children is subtracted in order to equalize the treatment of all children.

In contrast, the 1998 ACSG states, in relevant part, as follows:

## II. GENERAL PROVISIONS

. . . .

B. **NUMBER OF CHILDREN** means the number of children of the parties for whom child support is being calculated in this case or hearing.

. . . .

G. **EXCEPTIONAL CIRCUMSTANCES** presented to the Court or Hearings Officer may warrant a departure from the guidelines' computation. If you believe exceptional circumstances apply to your case, complete the Exceptional Circumstances Declaration form (Attachment D) and attach it to your guidelines worksheet. . . .

. . . .

**SOLA Income** is Gross Income minus the base net self-support need for each parent—

established at pre-tax $743 per month and based on the 1996 federal poverty guidelines for minimum food, clothing, shelter and other essential needs. . . .

*SOLA SUPPORT NEEDS:*

. . . These Child Support Guidelines provide that parents are entitled to keep suffi-cient income for their most basic needs and to facilitate continued employment. Until the basic needs of the child(ren) are met, parents may not retain any more income than required to provide the bare necessities for the parent's own self-support. When income is sufficient to cover the basic needs of the parents and the child(ren), the child(ren) shall share in the parents' additional income so that the child(ren) can benefit from the parent's higher standard of living.

In the 1998 ACSG, child support "owed by the non-custodial parent to other children, whether by a previous court order or a non-adjudicated legal obligation (including children residing in the obligor's household)" is not considered when calculating the SOLA support amount. It is considered when the record is being examined for exceptional circumstances pursuant to the following part of the 1998 ACSG:

B. **EXCEPTIONAL CIRCUMSTANCES**

The Court or hearing officer may order child support which deviates (varies) from the Guidelines *only* if exceptional circumstances warrant such deviation, pursuant to HRS Sections 576D–7 and 576E–15. In such cases, the court or hearings officer shall make oral findings of fact on the record at the hearing or prepare written findings of fact regarding the exceptional circumstances.

Although it is impossible to predict all exceptional circumstances that warrant departure, the following examples provide some guidance:

. . . .

● Other child support obligations of a parent that render him/her unable to pay the Guideline's level of child support for the subject child(ren).

. . . .

● Total monthly child support obligation (Line 14 or Line 17) is greater than 70% of the parent's net income from the Income Table.

## POINTS ON APPEAL

John Doe contests the amount of the child support he was ordered to pay for Child, arguing that the trial court should have accommodated his request for an exceptional circumstance deviation (ECD) because· he has three other children to support in addition to Child. He contends that (1) the trial court "erred in not applying the maximum of 70% of [his] net monthly income for child support for [his] three children by marriage and the subject child as an exceptional circumstance[,]" and (2) the trial court erred in denying his September 4, 2002 Motion to Reconsider, Alter, or Amend the Judgment of Paternity. We disagree and affirm.

## BACKGROUND

Child was born in July of 2001. On May 17, 2002, the State of Hawai'i Child Support Enforcement Agency (CSEA), created by HRS Chapter 576D (Supp.2003), filed a Complaint for Establishment of Paternity. On June 14, 2002, John Doe and Mother agreed to undergo genetic testing to determine paternity. Genetic test results confirmed John Doe's paternity.

At the August 29, 2002 child support hearing, Mother testified that her gross income was then an average of $1,350 per month. John Doe testified that he was then married and he and his wife (Wife) had three children (Three Children) living with them, aged "thirteen, eleven, and nine." The monthly gross income from John Doe's main job totaled $1,500. John Doe occasionally did side jobs in maintenance and handyman work, bringing his monthly gross income to $2,200.

When asked the amount of Wife's gross income, John Doe testified, "I don't know offhand." In contrast, John Doe submitted into evidence a Child Support Guidelines Worksheet indicating that Wife receives a monthly gross income of $1,048, and that the monthly healthcare expenses John Doe then paid for the Three Children was $580.

The main issue at the hearing was the amount of child support payable by John Doe for Child. Computations pursuant to the 1998 ACSG resulted in the amount of $550 per month. John Doe argues that the court should have ordered an exceptional circumstances reduction because he was obligated to support the Three Children in addition to Child. The arguments presented at the hearing were essentially as follows:

[COUNSEL FOR JOHN DOE]:

And when we take 70 percent, . . .—$971 comes out to $680, I believe. So among the four children, if that's the maximum amount he's obligated to pay, comes out to $178.

. . . .

COUNSEL FOR JOHN DOE: I believe that the total amount of child support, though, should be 70 percent of his net income. And if we're looking at what under law he's obligated to do in terms of supporting his children . . . it's being used to protect the three children that we're revisiting . . . [o]therwise, what we're doing is we're ordering a high amount of support for this one child out of wedlock and be to the detriment of the other three children. And that seems to fly in the face of what the law is preventing to do in terms of protecting all the children.

And I think there should be a class of children, if you're married, is one rule. And if the children came out of a non-marital relationship, then you have another rule.

THE COURT: I understand. I don't think the the [sic] 70 percent rule is the way you classified it. The 70 percent rule, as I understand it, involves previous support orders. In other words, if a person has a certain income and through previous support orders the amount calculated on the guidelines is more than 70 percent based on those prior support orders, then, you know, the Court can find exceptional circumstances.

You know, it seems to the Court, frankly, that, you know, [John Doe] has apparently chosen to have three other children in addition to this one. I don't see why [Mother] should suffer simply because, you know, [John Doe] has three other kids to support.

Therefore, the Court is going to order that child support be calculated according

to the child support guidelines. The Court is is [sic] not going to find exceptional circumstances.

The Court, however, will compute back child support from the filing of the petition as opposed to the date of birth.

The September 4, 2002 Judgment ordered John Doe to pay the CSEA $192 for genetic testing, and to make child support payments of $550 per month starting on October 2002, plus an additional $25 per month until the amount of $2200, which is the total of the child support owed for May, June, July, and August 2002, is paid.

On September 10, 2002, John Doe filed "Defendant [John Doe's] Motion to Reconsider, Alter, or Amend the Judgment of Paternity Filed on 9/4/02" (Motion for Reconsideration). In his Motion for Reconsideration, John Doe argued that the Judgment:

failed to take into account,

1. The applicable circumstances when child support for the subject minor child was calculated, in particular, the existence of three minor children born prior to the subject child as a result of [John Doe's] marriage; and,

2. The applicable exceptional circumstances when child support for the subject minor child was calculated, in particular that more than 70% of [John Doe's] net income was used for child support for all four children, i.e., the three minor children of the marriage and the subject child.

Further, the method by which the Court calculated child support in this case violates due process and equal protection under federal and State of Hawaii law.

On October 4, 2002, the court filed an Order Denying Without Hearing [John Doe's] Motion to Reconsider, Alter, or Amend the Judgment of Paternity Filed on September 4, 2002 because "the instant pleadings fail to show sufficient good cause to warrant a hearing."

John Doe filed a notice of appeal on October 11, 2002. On January 28, 2003, the court

entered its Findings of Fact and Conclusions of Law, in relevant part, as follows:

## FINDINGS OF FACT

. . . .

14. Mother pays child care costs of $350 per month.

15. Mother pays health/dental insurance premiums for the child in the amount of $25 per month.

16. Father is self-employed and reports a total monthly income from two jobs of $2200.

17. Father has not provided financial assistance to Mother for the Subject Child.

18. Father and his wife have three children and they are all living together.

19. Father's [sic] presented one exhibit into evidence. Exhibit A, received into evidence subject to cross examination, was a child support guidelines worksheet showing Father's monthly gross income of $2200 and his wife's monthly gross income of $1048. This child support guidelines worksheet was calculated for his three children of his marriage giving him credit for health/dental insurance for the children in the amount of $580.

20. Father agreed that based upon the Child Support Guidelines Worksheet with Mother's monthly gross income of $1350 and Father's monthly gross income of $2200 and credit given to Mother for child care of $350 and health/dental insurance payment of $25, the child support would be $550.

21. Father is not under any order for child support from any Court for any of his children.

22. Father did not provide any corroborating evidence regarding the income of his wife.

23. Father testified that he has three children living with him and that the calculated child support amount of his three children in the amount of $600 added to the calculated amount of child support for the Subject Child of $550 totals $1150

which exceeds 70% of the obligor[']s net income.

24. The Court finds that Father has not proven exceptional circumstances exist to warrant a deviation from the calculated child support amount.

25. Father did not submit for the Court's review an "Exceptional Circumstances Declaration" form as required.

26. Based upon the evidence presented, the applicable law and the child support guidelines, the Court finds that there are no exceptional circumstances present in this case to warrant a deviation from the calculated child support amount.

*Conclusions of Law*

. . . .

3. Based upon the testimony of the parties, Father's monthly gross income is $2200 and Mother's monthly gross income is $1350. Based upon the [Child Support Guidelines Worksheet] including giving Mother $25 credit for health/dental insurance payments and $350 for child care payments, Father shall pay child support in the amount of $550 per month.

4. Based on the credible evidence presented at the hearing, Father has not met his burden of proof that exceptional circumstances exist which would warrant a

deviation from the calculated child support guidelines.

5. Past child support due to Mother is calculated from the date of the filing of the Complaint, May 2002 through August 2002 in the amount of $2,200 (4 months × $550). This amount will be liquidated at the rate of $25 per month.

This appeal was assigned to this court on June 18, 2003.

STANDARDS OF REVIEW

A. Child Support

Findings of fact are reviewed under the clearly erroneous standard of review. *State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995). Decisions determining what is an exceptional circumstance authorizing an exceptional circumstance deviation (ECD) from the 1998 ACSG are conclusions of law reviewed de novo under the right/wrong standard of review. *Mack v. Mack,* 7 Haw.App. 171, 180, 749 P.2d 478, 483 (1988). Decisions whether to order ECDs are discretionary decisions reviewed under the abuse of discretion standard of review. *Id.*

B. Motion for Reconsideration

The motion for reconsideration filed in this case on September 4, 2002, was not required by HRS § 571–54 (1993).[1] Ex-

1. Hawaii Revised Statutes (HRS) § 571–54 (1993) states, in relevant part, as follows:

**Appeal.** An interested party aggrieved by any order or decree of the court may appeal to the supreme court for review of questions of law and fact upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602, except as hereinafter provided. Where the decree or order affects the custody of a child or minor the appeal shall be heard at the earliest practicable time. In cases under section 571–11 the record on appeal shall be given a fictitious title, to safeguard against publication of the names of the children or minors involved.

The stay of enforcement of an order or decree, or the pendency of an appeal, shall not suspend the order or decree of the court regarding a child or minor or discharge the child or minor from the custody of the court or of

the person, institution, or agency to whose care the child or minor has been committed, unless otherwise ordered by the family court, or by the supreme or intermediate appellate court after an appeal is taken. Pending final disposition of the case the family court, or the supreme or the intermediate appellate court after the appeal is taken, may make such order for temporary custody as is appropriate in the circumstances. If the supreme or the intermediate appellate court does not dismiss the proceedings and discharge the child or minor, it shall affirm or modify the order of the family court and remand the child or minor to the jurisdiction of the court for disposition not inconsistent with the supreme or the intermediate appellate court's finding on the appeal.

An order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9) shall be subject to appeal to the supreme court only as follows:

cept when required by HRS § 571–54, the purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments, not to re-litigate old matters or raise arguments or evidence that could and should have been brought during the earlier proceeding. *Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.*, 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) (citations omitted). We review "[a] trial court's ruling on a motion for reconsideration ... under the abuse of discretion standard." *Id.* An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (citation omitted).

> Within twenty days from the date of the entry of any such order or decree, any party directly affected thereby may file a motion for a reconsideration of the facts involved. The motion and any supporting affidavit shall set forth the grounds on which a reconsideration is requested and shall be sworn to by the movant or the movant's representative. The judge shall hold a hearing on the motion, affording to all parties concerned the full right of representation by counsel and presentation of relevant evidence. The findings of the judge upon the hearing of the motion and the judge's determination and disposition of the case thereafter, and any decision, judgment, order, or decree affecting the child and entered as a result of the hearing on the motion shall be set forth in writing and signed by the judge. Any party deeming oneself aggrieved by any such findings, judgment, order, or decree shall have the right to appeal therefrom to the supreme court upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602; provided that no such motion for reconsideration shall operate as a stay of any such findings, judgment, order, or decree unless the judge of the family court so orders; provided further that no informality or technical irregularity in the proceedings prior to the hearing on the motion for reconsideration shall constitute grounds for the reversal of any such findings, judgment, order, or decree by the appellate court.

HRS § 571–11 (1993) states, in relevant part, as follows:

> **Jurisdiction; children.** Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:
> (1) Concerning any person who is alleged to have committed an act prior to achieving eigh-

teen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance. Regardless of where the violation occurred, jurisdiction may be taken by the court of the circuit where the person resides, is living, or is found, or in which the offense is alleged to have occurred.
> (2) Concerning any child living or found within the circuit:
>   (A) Who is neglected as to or deprived of educational services because of the failure of any person or agency to exercise that degree of care for which it is legally responsible;
>   (B) Who is beyond the control of the child's parent or other custodian or whose behavior is injurious to the child's own or others' welfare;
>   (C) Who is neither attending school nor receiving educational services required by law whether through the child's own misbehavior or nonattendance or otherwise; or
>   (D) Who is in violation of curfew.
> (3) To determine the custody of any child or appoint a guardian of the person of any child.
> (4) For the adoption of a person under chapter 578.
> (5) For the termination of parental rights under sections 571–61 to 571–63.
> (6) For judicial consent to the marriage, employment, or enlistment of a child, when such consent is required by law.
> (7) For the treatment or commitment of a mentally defective, mentally retarded, or mentally ill child.
> (8) Under the Interstate Compact on Juveniles under chapter 582.
> (9) For the protection of any child under chapter 587.
> (10) For a change of name as provided in section 574–5(a)(2)(C).

## DISCUSSION

In his points of error, John Doe challenges findings of fact (FsOF) nos. 24 and 26 and conclusions of law (CsOL) nos. 3, 4, and 5.

John Doe argues that FsOF nos. 24 and 26 are not "findings of fact" but rather "conclusions of law". We disagree. They are findings of fact and they are not clearly erroneous.

At the hearing, John Doe relied solely upon Exhibit A, which was a Child Support Guidelines Worksheet with calculations determining how much child support he allegedly would be required to pay to Wife for their Three Children if he was separated from Wife and she was the custodial parent of their Three Children. In relevant part, the calculations were as follows:

1 BASE PRIMARY SUPPORT $250 × *3* (# of children)     750

. . . .

10 TOTAL SUPPORT NEED . . .     1477.97

| | FATHER(A) | MOTHER(B) | TOTAL(C) |
|---|---|---|---|
| 11 Monthly Gross Income | 2200 | 1048 | = 3248 |
| 12 Monthly Net Income . . . | 971 | 196 | = 1167 |
| 13 Income Percentage . . . | 83% | 17% | |
| 14 Support Payable by Each Parent | 1180 | 242 | |

. . . .

| | | | |
|---|---|---|---|
| 16 *Less* Monthly Health Insurance Cost . . . | 580 | | |
| 17 REMAINING CHILD SUPPORT PAYABLE . . . | 600 | 240 | |

---

In other words, John Doe alleges that Wife's monthly net income is $196, his monthly net income is $971, and he is obligated to pay $1,180 in child support (including health insurance costs) for the Three Children. John Doe argues that the trial court "erred in not including his three older minor children as part of the child support calculations for the subject child." We disagree. The 1998 ACSG explicitly states that Child Support Guidelines Worksheet calculations involve only "the number of children of the parties for whom child support is being calculated in this case or hearing." The Three Children are not included within this categorization.

John Doe argues that the trial court was wrong in denying "said exceptional circumstance" because the "child support guidelines clearly provide for an exceptional circumstance to deviate if the amount of support is greater than 70% of [his] net income." John Doe notes that his net monthly income is $971. If he is ordered to pay $550 for the Child, he only has $421 remaining to pay for his other Three Children. In his view, if he is required to pay relatively equivalent amounts for each of his other Three Children as he is required to pay for the Child, the amount he pays for child support will exceed 70% of his net income. If he is not required to pay relatively equivalent amounts,[2] the treatment of all children will not be equal and the other Three Children will be denied their constitutional right to equal protection under the law.

■ As previously noted by this court, "PCS plus SOLA is presumptively the amount that should be ordered and . . . the party seeking an [exceptional circumstances deviation] has the burden of proof." *DeMello v. DeMello*, 87 Hawai'i 209, 214, 953 P.2d 968, 973 (App.1998) (citations omitted). As noted in the 1998 ACSG, an exceptional circumstance occurs when John Doe's other child support obligations cause his inability to pay the 1998 ACSG's level of child support for Child. This exceptional circumstance follows from the requirement stated in HRS § 576D–7(b)(3) that the guidelines shall be "[a]pplied to ensure, at a minimum that the child for whom support is sought benefits

**2.** Respondent–Appellant John Doe (John Doe) cites to *Child Support Enforcement Agency v. Mazzone*, 88 Hawai'i 456, 967 P.2d 653 (App. 1998), and attempts to distinguish the reasoning of that case from the facts here. The father in that case had a child born out of wedlock and subsequently married another woman and had two more children. The father similarly argued that his child support payments should be lowered under the exceptional circumstance of having "[o]ther child support obligations." The court rejected this argument and held that the "[o]ther child support obligations" exceptional circumstance is limited to (a) "child support obligations" and not family obligations; and (b) "obligations", not discretionary choices.

Similarly, although John Doe relied upon "the child support guidelines worksheet [to calculate expenses] for the three older minor children", these calculations ultimately represent "family obligations". Therefore, the family court properly rejected Doe's argument that these child support payments would exceed "70% of his net income."

from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor parent[.]"

However, allocation of the same amount for each child does not "ensure, at a minimum that the child for whom support is sought benefits from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor parent[.]" It means only that whichever parent or guardian the money has been allocated to has the money. The relevant questions are how it is being spent and how it will be spent.

Another exceptional circumstance occurs when the total of John Doe's monthly child support obligations exceeds 70% of John Doe's net income. However, the law does not require pro-rata allocation. The relevant questions pertain to actual "child support obligations" and actual reasonable expenditures. Clearly, it is John Doe's burden to prove the actual amount of his other child support obligations. In this situation, to satisfy his burden, John Doe must prove, in light of the relevant facts and circumstances, (1) the amount that John Doe reasonably is and/or should be paying for his other Three Children,[3] (2) John Doe's reasonable inability to pay $550 per month for Child, and (3) the amount John Doe is reasonably able to pay for Child so that Child actually "benefits from the income and resources of [John Doe] on an equitable basis in comparison with any other minor child of [John Doe][.]" The law does not guarantee that John Doe will not be required to pay more than 70% of his net income for child support.

In this case, John Doe failed his burden of overcoming the presumption that the support obligation calculated in accordance with the 1998 ACSG is the amount that he should be ordered to pay for Child. The following evidence, proffered by John Doe, did not satisfy his burden: (a) John Doe has the Three Children living with him and Wife, and (b) if (i) Wife had a monthly gross income of

$1,048 per month, (ii) Wife and John Doe were separated, (iii) Wife was the custodial parent of their Three Children, and (iv) John Doe was ordered to pay Wife child support for the Three Children according to the 1998 ACSG, then John Doe's net income of $971 per month allegedly would be insufficient to pay for himself, his child support obligation for the Three Children, and his $550 per month child support obligation for Child.

■■■■ Turning to John Doe's equal protection argument, we note that:

[t]he guarantee of equal protection of the laws under Hawai'i and United States Constitutions requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. However, "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. In the absence of a suspect classification or an intrusion upon a fundamental constitutional right, the challenged classification must bear some rational relationship to legitimate state purposes.

*State v. Miller,* 84 Hawai'i 269, 276, 933 P.2d 606, 613 (1997) (citations omitted).

Although Hawai'i does not have any case law on this precise topic, the Supreme Court of Tennessee recently decided a case with similar facts. In *Gallaher v. Elam,* 104 S.W.3d 455 (Tenn.2003), a married father (the married father) of three marital children had an affair that resulted in the birth of a non-marital child. *Id.* at 459. The family court ordered the married father to pay child support to the non-marital child's mother. Thereafter, the non-marital child's mother filed a petition for enforcement and an increase. The married father challenged the constitutionality of the Tennessee child support guidelines (TCSG) on equal protection grounds. *Id.* In particular, the married father argued that the TCSG did not consider the three marital children living in his household. *Id.* at 461. The Supreme Court of

---

**3.** If John Doe reasonably should be spending an amount of money in support of his three children living with him but in fact is not, the reason why he is not is relevant when determining the impact his obligation to support his three children living with him will have on his obligation to support his child not living with him.

Tennessee responded that the TCSG implicated the married father's duty to support his children, and did not infringe on his right to be a parent or to have a relationship with any of his children. *Id.* Because child support is not a fundamental right, and because children who do not benefit from child support are not a suspect class, the Supreme Court of Tennessee utilized a rational basis test to determine the validity of the TCSG. *Id.*

Applying the rational basis test, the Supreme Court of Tennessee determined that the TCSG treated "obligors [4] who have children for whom there are no orders of support differently from obligors who have children subject to court-ordered support." *Id.* at 461–62 (footnote added). Therefore, "[i]t is not necessary that the legislature state a rational basis for this differential treatment. A classification will pass constitutional muster if we can conceive of some rational basis for the distinction." *Id.* at 462. Ultimately, the Tennessee Supreme Court concluded that

> [i]t is rational to require obligors to be under a court order to support their children before those children can be considered in calculating the amount of support for another child because such a requirement ensures that the obligor is legally liable for the amount of child support claimed as a deduction. Furthermore, the obligor's children who are not receiving support pursuant to a court order and who live with the obligor inherently benefit from the obligor's household expenditures. Children who do not live with the obligor do not enjoy this benefit. Thus, both policy and fact justify the classification at issue. Moreover, the trial court is not flatly prohibited from considering non-court-ordered support. Chapter 1240–2–4–.04(4) of the Guidelines provides that courts may deviate from the Guidelines in cases of "extreme economic hardship." We conclude that the state has a rational, legiti-

mate interest in requiring obligors to be under a court order to support their children before these children may be considered in calculating the amount of support for another child.

*Id.*

Similarly, we conclude that the 1998 ACSG classification challenged by John Doe is constitutional. It reasonably (1) calculates the child support payable for Child without regard to child support "owed by the non-custodial parent to other children, whether by a previous court order or a non-adjudicated legal obligation (including children residing in the obligor's household)[,]" and (2) reasonably imposes upon the non-custodial parent the burden of proving that "exceptional circumstances warrant . . . deviation" from the calculated amount. In the instant case, John Doe failed to prove exceptional circumstances.

We affirm the family court's denial of Doe's Motion for Reconsideration. The family court was right when it decided that John Doe failed to "show good cause to warrant further hearing." John Doe's only arguments in his Motion for Reconsideration were arguments that had already been presented at the hearing and did not raise new evidence and or arguments that could not have been presented during the earlier adjudicated motions.

## CONCLUSION

Accordingly, we affirm the September 4, 2002 Judgment of Paternity and the October 4, 2002 "Order Denying Without Hearing [Doe's] Motion to Reconsider, Alter, or Amend the Judgment of Paternity Filed on September 4, 2002".

---

**4.** Pursuant to the Tennessee Child Support Guidelines, the court defined an obligor as "the parent with whom the child(ren) do not primari-

ly live". *Gallaher v. Elam*, 104 S.W.3d 455, 460 n. 2 (2003).