LEZLEY CHIEKO KUSHIMA, Plaintiff-Appellee,
v.
BRIAN TETSUO KUSHIMA, Defendant-Appellant
No. 28897
Intermediate Court of Appeals of Hawaii.
June 26, 2009.
On the briefs:
Joyce J. Uehara, Brian K. Yomono, for Defendant-Appellant.
Fred I. Waki (Law Office of Fred I. Waki), for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
WATANABE, Acting Chief Judge, NAKAMURA, and FUJISE, JJ.
Defendant-Appellant Brian Tetsuo Kushima (Father) appeals from the "Order Regarding Plaintiff's Motion and Affidavit for Post-Decree Relief, Filed August 8, 2007" (Order) that was entered by the Family Court of the First Circuit (family court)[1] on November 14, 2007. Pursuant to the stipulation of Father and Plaintiff-Appellee Lezley Chieko Kushima (Mother), the Order increased Father's monthly child support payment from $870 ($435 per child) to $1,390 ($695 per child). The Order also required Father to pay 40% of the tuition necessary to permit the parties' minor son to continue attending Assets School, with Father's share amounting to $7,680 for the 2007 school year. Father appeals the portion of the Order requiring him to pay part of his son's tuition.

I.

A.
Father and Mother were divorced in 1999 and have two children together: a daughter born in 1988 (Daughter) and a son born in 1991 (Son). The March 30, 1999, divorce degree awarded Mother sole physical and legal custody of the children and requited Father to pay $870 per month in child support. The divorce decree further provided that Mother was responsible for the first $300 of the children's medical and dental expenses not covered by insurance, with Mother and Father equally responsible for the cost of the children's uncovered medical and dental expenses over $300 per year.
After the divorce decree was entered, Son was diagnosed by the Department of Education (DOE) as having a "Specific Learning Disability," commonly referred to as dyslexia.[2] Son was first assessed by the DOE while he was in the second grade, and he was found to be reading at a before-preschool level. The DOE devised special programs for Son, with the goal that he would be reading at a third-grade level by the time he reached the fifth grade. According to Mother, however, the DOE "missed every single one of their goals," and Son was only reading at a first-grade level when he was in the fifth grade.
Because of Mother's concern over Son's progress, Mother researched different options and contacted the Hawai'i Dyslexia Association, which apparently recommended the Assets School. However, due to the high costs of Assets School, Mother looked for alternatives and eventually enrolled Son at Cathedral School, a private school which accommodated children with dyslexia and taught the same learning processes used by Assets School. Mother paid for Son's schooling at Cathedral School and for private tutors herself, with no contribution from Father.
Cathedral School only has classes up to the eighth grade, and Mother was able to enroll Son at Assets School. Mother paid for the tuition at Assets School by borrowing money and through help from her parents. Although Son previously received some financial aid from Assets School, he did not receive any financial aid f r the 2007-2008 term because Father failed to submit his required financial information to the school. Assets School's tuition for the 2007-2008 school year was $19,200. Son had made progress while at Assets School and had improved his reading ability to a mid-fifth-grade level, though he remained in the "95th percentile, which meant that 95 percent of kids his age read[] better than he [did]."

B.
On August 8, 2 007, Mother filed a motion for post-decree relief, which sought modification of Father's child support obligations in accordance with the Child Support Guidelines (CSG) Worksheet and requested that Father pay for half of Son's Assets School tuition. In support of her request that Father help pay for Son's tuition, Mother alleged that Son has dyslexia and needs to attend Assets School because the DOE "indicated there is nothing further it can do for him." Mother argued that Son's tuition constituted a medical expense and cited the provision in the divorce decree which required Father to share in the payment of the children's medical expenses not covered by insurance for medical expenses that exceed $300 per year.
On October 19, 2007, Father filed a memorandum in opposition to Mother's motion, in which he contested the tuition request, but did not oppose reevaluating his child support payments pursuant to Hawaii Revised Statutes (HRS) § 576D-7(e) (2006).[3] Father contested the tuition request on the grounds that: 1) Mother did not provide any documentary or other substantiation for her assertion that the DOE could do nothing more for Son, 2) Mother did not demonstrate that Assets School would help Son, and 3) Mother did not attempt to have Son's tuition paid by her medical insurance.
On November 14, 2007, a trial was held on Mother's motion. Pursuant to a stipulation of the parties, the family-court ordered that Father's child support payments be increased to $1,390 per month. This was the amount determined under the CSG Worksheet and which resulted from the increase in Father's income since the divorce decree.[4] The circuit court also ordered that Father shall pay 40% of Son's tuition at Assets School.
The family court subsequently issued Findings of Fact and Conclusions of Law in support of its decision. The following findings of fact and conclusions of law are pertinent to the family court's decision to require Father to contribute toward payment of Son's tuition:
FINDINGS OF FACT
. . . .
3. Since the filing of the Decree, [Son] was assessed twice by the Department of Education ("DOE") to determine his learning disability. The first occurred when [Son] was in the second grade, at which time the DOE determined he was reading at a "before preschool level". The DOE set particular goals for [Son] with the expectation that he would be reading at a third-grade level by the time he reached fifth-grade.
4. [Son] was re-assessed by the DOE when he was in the fifth-grade. The re-assessment revealed [Son] was reading at only the first-grade level.
5. Before [Son]'s sixth grade year, Mother was already seeking alternatives to the DOE as [Son] did not appear to be progressing well enough in his reading. Mother enrolled [Son] at the Cathedral School and had [Son] repeat the sixth-grade.
6. After [Son] competed his education at the Cathedral School, which goes only to the eight-grade [sic], [Son] was enrolled at Assets School. While at Assets School, [Son] was assessed as having dyslexia. Since attending Assets School, [Son] increased his reading Level by almost four grade levels.
7. The annual tuition for Assets School is $19,200.00, which to date, has only been paid by Mother through loans and financial aid. In addition, any payments to the parties' adult daughter's educational expenses relating to her attendance at the University of Hawaii is paid by Mother.
CONCLUSIONS OF LAW
. . . .
2. The Court finds that although Mother sought contribution for half of the parties' minor son's tuition to attend Assets School under the medical provision of the Decree, Mother's Motion also sought a review of Father's child support obligation, which the Court did consider in rendering its decision as stated herein, i.e. in particular whether Father should be ordered to contribute toward minor son's tuition at Assets School, and if so, how much.
3. There is a material change in circumstances warranting a review of Father's child support obligation, including whether Father should contribute to minor son's tuition at Assets School based on the following: 1) Since the filing of the Decree, the parties' monthly gross incomes have changed; and 2) The parties' minor son's learning disability, i.e. dyslexia, was not determined until after the Decree was filed.
4. That based on the evidence presented relating to the parties' financial status and the minor son's attendance at Assets School, and the entire record herein, the Court concludes that it is in the best interest for the parties' minor son to continue his attendance at Assets School, and that Mother shall pay 60 percent of said tuition and Father shall pay 40 percent stating with the 2007 school year, i.e. Father's share of the tuition for the 2007 school year is $7,680.00.

II.
Father asserts that the family court ordered Father to contribute to Son's "tuition at the Assets School for dyslexic children" on the ground that such payment was incidental to Father's child support obligations and an apparent exceptional circumstance. On appeal, Father contends that the family court erred in its decision because: 1) Mother's post-decree motion argued that Father was required to contribute to Son's tuition on the ground that it was an uncovered medical expense, and not because Son's educational needs constituted an exceptional circumstances warranting departure from the CSG; and 2) Son; s educational needs did not constitute an exceptional circumstance warranting departure from the CSG. For the reasons discussed below, we affirm.
We agree with Father that the family court's basis for requiring Father to contribute to Son's tuition is different from that argued by Mother in her post-decree motion. However, Mother's motion did seek modification and review of Father's child support obligations, and thus Father had notice of the potential that his support obligations would be changed. More importantly, Father has been afforded the opportunity on appeal to argue why his Son's dyslexia should not be considered an exceptional circumstance. Having considered his arguments and the record in this case, we conclude that the family court did not err in requiring Father to contribute to Son's tuition at the Assets School.
HRS § 571-52.5 (2006) states that "[w]hen the court establishes or modifies the amount of child support required to be paid by a parent, the court shall use the [child support] guidelines established under section 576D-7, except when exceptional circumstances warrant departure." The 2004 Amended CSG are applicable in this case. The instructions for the 2004 Amended CSG state in relevant part as follows:
B. EXCEPTIONAL CIRCUMSTANCES
.... The party requesting an exceptional circumstances deviation from the Child Support Guidelines has the burden of proving that exceptional circumstances exist and that these circumstances warrant departure from the calculated Child Support Guidelines amount.
The Court .. shall determine whether alleged exceptional circumstances exist on a case-by-case basis....
Examples of exceptional circumstances include (without limitation) the following:
. . . .
3. Extraordinary Needs of Child/Other Parent Where the subject children), or the subject child(en)'s other parent, have extrordinary needs (e.g., special educational and/or housing need for a physically or emotionally disabled child)[.]
See Child Support Enforcement Agency v. Doe, 104 Hawai'i 449, 452, 91 P.3d 1092, 1095 (App. 2004) (quoting the instructions for the CSG).
"Decisions determining what is an exceptional circumstance authorizing an exceptional circumstance deviation... from the [Amended CSG] are conclusions of law reviewed de novo under the right/wrong standard of review." Id. at 455, 91 P. 3d at 1098. A decision on whether to order an exceptional circumstance deviation is a discretionary decision reviewed under the abuse of discretion standard. Id.
Father argues that Mother failed to sustain her burden of showing that Son's dyslexia condition constituted an exceptional circumstance warranting a deviation from the CSG. In particular, Father contends that Mother failed to demonstrate that the public school system could not adequately address Son's dyslexia condition, and thus Mother failed to prove that the cost of sending Son to Assets School was a necessary and reasonable expense. We disagree.
Father does not dispute that Son suffers from dyslexia, a learning disability, which was not diagnosed until after the issuance of the divorce decree. Mother introduced evidence that she had attempted to address Son's dyslexia through the public school system, but that the DOE did not achieve its stated goal of having Son read at a third-grade level by the time he was in the fifth grade. Instead, when Son was assessed in the fifth grade, he was only reading at a first-grade level. Mother also introduced evidence that Son has made substantial progress in improving his reading ability through participating in the special programs offered by Cathedral School and Assets School.
We conclude that Mother met her burden of showing that the cost of sending Son to Assets School, which offers specialized educational programs to address Son's dyslexia, was a necessary and reasonable expense and that Son's dyslexia was an exceptional circumstance warranting departure from the CSG. We note that courts from other jurisdictions have upheld orders requiring the payment of private school tuition when attendance at a private school would benefit a child with special needs. See Lee v. Maier, 728 A.2d 154, 156 (Me. 1999); In re Marriage of Aylesworth, 165 Cal. Rptr. 389, 394 (Cal. Ct. App. 1980).
Father asserts that federal and state law require the DOE to provide services to assist children with disabilities and, in certain circumstances, to pay for appropriate services that the DOE cannot provide. He contends that Mother's failure to pursue possible remedies against the DOE preclude mother from claiming that Son's tuition for Assets School was a necessary and reasonable expense. We are not persuaded. The availability of certain services through the DOE for a child with disabilities does not mean that such services will be equivalent to or as beneficial for the child as those available at a private school. Nor does it mean that a parent's decision to place a child with special educational needs in a private school is unreasonable. See Maier. 728 A.2d at 156 ("[T]he availability of a public education program and extensive federal and state guidelines regarding special education does not preclude a parent's decision to place a child in a private school."). Under the circumstances of this case, the DOE's obligation to provide certain services to children with disabilities did not render unnecessary or unreasonable the cost of enrolling Son in a private school with programs specifically tailored to address Son's special learning needs. We conclude that the family court did not abuse its discretion in requiring Father to contribute to Son's tuition at the Assets School.

III.
We affirm the "Order Regarding Plaintiff's Motion and Affidavit for Post-Decree Relief, Piled August 8, 2007" that was entered by the family court on November 14, 2007.
NOTES
[1] The Honorable R. Mark Browning presided.
[2] Dyslexia is "a variable (ten familial learning disability involving difficulties in acquiring and pressing language that is typically manifested by a lack of proficiency in reading, spelling, and writing[.]" Merriam Webster's Collegiate Dictionary 389 (11th ed. 2008).
[3] HRS § 576D-7(e) provides:

The responsible on custodial parent for which child support has previously been ordered shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without hiving to show a change in circumstances. The responsible or custodial parent shall not be precluded from petitioning the family court or the child support enforcement agency for review and adjustment of the child support order more than once in any three year period if the second of subsequent request is supported by proof of a substantial or material change of circumstances.
[4] Father, child support abligation under the GSG Worksheet was based on a monthly gross income of $6,257.