IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 21, 2006 Session

## RICHARD JOHN JOLLY v. LYNETTE SUZANNE JOLLY

**A Direct Appeal from the Chancery Court for McNairy County**
**No. 7471     The Honorable Martha Brasfield, Chancellor**

<hr>

**No. W2005-01845-COA-R3-CV - Filed December 12, 2006**

<hr>

After a decree was entered in a divorce proceeding in Kansas, wife attempted to enforce the decree in Tennessee as it pertains to, *inter alia*, a division of marital property. The case reached the Supreme Court, and that Court determined that relief sought involved the enforcement of the Kansas decree, and that the decree had not been properly registered and notice given, required by the Uniform Interstate Family Support Act (UIFSA). The case was remanded to the trial court to insure that the registration and notice procedures of UIFSA were followed and that husband be allowed to present defenses thereto. The trial court made a division of the parties' marital property in Tennessee and allowed credit to wife for arrearage of child support decreed by the Kansas court. Husband has appealed. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Richard John Jolly, Pro Se
William K. Seaton of Selmer, Tennessee for appellee, Lynette Suzanne Jolly
Paul G. Summers, Attorney General and Reporter; Pamela A. Hayden-Wood, Senior Counsel, Intervening Party

**OPINION**

## I.    Facts and Procedure

This appeal involves a divorce decree which was granted to Lynnette Jolly ("Ms. Jolly," "Appellee") by the District Court of Johnson County, Kansas, and Ms. Jolly's attempt at enforcing that decree against her ex-husband, Richard John Jolly, a.k.a.Yericho Y. Yisrael, ("Mr. Jolly," "Appellant") in the Chancery Court of McNairy County, Tennessee.   The procedural history of the case is long and includes prior appeals to this court and the Tennessee Supreme Court.  *See Jolly v. Jolly*, No. W2001-00159-COA-R3-CV, 2002 WL 1592678 (Tenn. Ct. App. Jul. 19, 2002), perm. to appeal granted Feb. 24, 2003; *Jolly v. Jolly*, 130 S.W.3d 783 (Tenn. 2004).  Throughout the course of the litigation, the basic issues have been the enforcement of the

Kansas divorce decree to collect Mr. Jolly's child support obligations under that decree and division of the parties' real property consisting of a 75 acre farm located in McNairy County, Tennessee. The Attorney General originally intervened in the case in May 2001 for the limited purpose of defending the constitutionality of T.C.A. §§ 36-6-106, 36-6-223, 39-13-302, and 39-13-306.

The current appeal arises from the actions of the Chancery Court of McNairy County following the remand of this case by our Supreme Court. *Jolly v. Jolly*, 130 S.W.3d 783 (Tenn. 2004). The Supreme Court remanded the case to the chancery court to "ensure that the registration and notice procedures set forth in [the Uniform Interstate Family Support Act] are followed and ... [to] consider the defenses raised by [Mr. Jolly] before determining whether the Kansas court's decree should be enforced." *Id.* at 788. The Supreme Court found the trial court's decision was flawed because the Kansas order had never been domesticated in Tennessee under the procedures set forth in the Uniform Interstate Family Support Act (UIFSA), T.C.A. §§ 36-5-2001 *et seq. Id.* at 786. As a result, Mr. Jolly was never served with a notice of registration, and the trial court enforced the Kansas order without first allowing Mr. Jolly the opportunity to contest the order's validity. *Id.* at 788.

On remand in the chancery court, Mr. Jolly challenged for the second time the constitutionality of T.C.A. §§ 36-6-106, 36-6-108, 36-6-223, and 39-13-306.[1] In addition, Mr. Jolly challenged for the first time the constitutionality of T.C.A. §§ 4-9-101 through 4-9-104 (Commission for Uniform Legislation), 36-5-121 (alimony and child support), 36-5-104 (failure to comply with child support order), 36-6-201 through 36-6-511 (child custody, visitation, and parenting plans), 18 U.S.C. § 228, 28 U.S.C. § 1738A, "no-fault divorce [T.C.A. § 36-4-101(14)], UCCJA, UCCJEA [Uniform Child Custody Jurisdiction and Enforcement Act, T.C.A. § 36-5-201, *et seq.*], and all legislation proceeding from the NCCUSL [National Conference of Commissioner on Uniform State Laws]."

A hearing was held in the trial court on June 12, 2004. On August 23, 2004, the trial court entered its Order Determining Enforceability of Kansas Decree. Declining to rule on the constitutionality of the challenged statutes, the trial court ordered:

1. The plaintiff/counter defendant's Motion to reschedule is denied.

2. In the Judgement and Decree of Divorce from the District Court of Johnson County, Kansas which has been filed for Registration the Kansas entered July 10, 2000 and in a previous Order from that Court the Kansas Court made a finding that the Court had jurisdiction over the plaintiff/counter-defendant for purposes of granting a

---

[1]The challenged statutes relate to child custody, parental relocation, unjustifiable conduct of a party, and custodial interference, all in the context of a divorce or custody dispute.

divorce and for issues related to custody and support. The District Court of Johnson County, Kansas found that both parties and their children had resided in the state of Kansas for a period of 3 months in 1997 and that Counter-plaintiff and the parties minor children had resided in the state of Kansas from April 1998 until through the time of the granting of the Divorce. The Kansas Court relied on K.S.A. 38-1301 et. seq. and K.S.A. 23-9, 101, 201 et. seq.

3. There was a factual basis for the Kansas Court's determination that the counter-plaintiff had resided in Kansas for a period of time and supported the minor children while in Kansas in 1997. There was also a factual basis for the Kansas Court's determination that the children which are the subject of the Court's orders related to custody and support had been residents of Kansas beginning in April of 1998. Kansas was properly determined to be the home state of the minor children.

4. The plaintiff/counter defendant was personally served with process at the beginning of the proceedings in Kansas and for a period of time was represented by counsel. The plaintiff/counter defendant made an appearance in the Kansas Court through his attorney. He also made an appearance in the Kansas Court by submitting pleadings and written argument not only for the purposes of arguing jurisdiction but also related to certain Motions in the Kansas Court after the Kansas Court determined it had jurisdiction to grant a divorce and determine issues related to the children.

5. There is no credible evidence that the Kansas Order was obtained by fraud.

6. The Kansas Court properly exercised jurisdiction in this cause for the purposes of granting a divorce and granting Orders related to custody and support of the minor children. The Kansas Decree is entitled to full faith and credit.

7. The Supreme Court of Tennessee found that all other issues raised by the plaintiff/counter defendant were without merit and therefore this Court's previous Orders are ... now entitled to be put into effect and enforced.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Judgement and Decree which has been filed for registration in this cause from the District Court of Johnson County Kansas is entitled to full faith and credit and that this Court's previous Order of December 21, 2000 should not [sic] be put into effect and enforced. All Court Costs will be paid by Richard John Jolly.

Before and after the order of August 23, 2004, Mr. Jolly filed several motions in the trial court. On August 8, 2005, the trial court entered its "Order on Plaintiff's Motions and Final Order." The order reads, in pertinent part:

A hearing was held in this matter on July 12, 2004, to determine if a Kansas order, which divorced the parties herein, determined child custody, and set child support, was entitled to full faith and credit in the State of Tennessee, and whether or not it should be enrolled in Tennessee and enforced in Tennessee.

After hearing the proof, the Court determined that the Kansas order was entitled to full faith and credit in the State of Tennessee, and ordered that it should be enrolled in the State of Tennessee.

Prior to and after the hearing on July 12, 2004, the Plaintiff, Mr. Richard John Jolly, filed many motions. The Court issued oral rulings on several motions on July 12, 2004, some of which were incorporated in the written order of the July 12, 2004 hearing, which was filed in the Court on August 23, 2004.

Rulings must be made in the remaining motions. It is the purpose of this order to file a written ruling on all outstanding motions filed by the Plaintiff.

* * *

Mr. Jolly filed a notice of appeal on August 11, 2005. Mr. Jolly then filed a Notice of Filing of Transcript and Statement of Evidence in the trial court on November 4, 2005. Mr. Jolly submitted transcripts to the trial court which he prepared himself after recording the court proceedings on a tape recorder. Additionally, Mr. Jolly filed a Statement of Evidence and Proceedings in the trial court on November 4, 2005.

However, in an order dated December 5, 2005, the trial court refused to approve any of the transcripts submitted by Mr. Jolly. Further, the trial court declined to approve Mr. Jolly's Statement of the Evidence. Regarding the submitted transcripts, the trial court stated:

-4-

This Court points out that there are many words which were inaudible and have been omitted, and that such omissions do not give a full and complete understanding of the total trial and the issues which were being discussed at the hearing. The Plaintiff is not a court reporter. The Court is unable to verify the authenticity and/or accuracy of the transcript. Thus, this Court shall not approve the transcript filed by the Plaintiff.

The Plaintiff also filed a second "Transcript of Proceedings," which includes 4 hearings which took place in the District Court of Johnson County, Kansas. This transcript is a copy, and there are no original signatures. There is no original verification concerning these transcripts. This Court has no knowledge of how these transcripts were obtained, or from whom they were obtained, and cannot authenticate this transcript. Further, these transcripts were not presented as exhibits at the hearing of July 12, 2004.

Therefore, this Court declines to approve the "Transcript of Proceedings of July 12, 2004," and declines to approve or authenticate the "Transcript of Proceedings" of the 4 proceedings from Johnson County, Kansas."

Regarding the statement of evidence filed by Mr. Jolly, the trial court stated, "The Plaintiff has also filed a 'Statement of Evidence and Proceedings Pursuant to T.R.A.P. Rule 24(c).' The trial court points out that this documents is argument, not a 'statement of evidence,'" and the trial court did not sign or approve Mr. Jolly's statement of evidence.

## II.     Issues

Mr. Jolly raises the following five issues for review:

I.      Are the proceedings and rulings of the trial court null and void for lack of jurisdiction for violation of Father's due process rights, in the first instance the right to a hearing before making a decision on jurisdiction (TCA 36-6-213(b)), denying due process hearing and in the end illegally and unlawfully allowing the suit to be bifurcated into another case no. 8123 contrary to *res judicata*?

II.     Should the Kansas Court Decree not be granted full faith and credit as it is null and void for lack of personal jurisdiction of Appellant Father, for lack of child custody subject-matter jurisdiction, and for termination of Father's fundamental liberty interest rights with his children

-5-

contrary to the U.S. Constitution First, Ninth, and Fourteenth Amendments and KSA 60-1616(a) which provides "reasonable visitation rights," contrary to the pleadings and contrary to the public policy of the State of Tennessee?

III.    Are the statutes TCA 36-6-205 and 28 U.S.C. 1738A unconstitutional in that they do not allow equal protection by limiting only a six month "extended home state jurisdiction?"

IV.    Do the statutes TCA 4-9-101 - 104 Commission for Uniform Legislation make Tennessee a member of an unconstitutional confederation of states known as National Conference of Commissioners on Uniform State Laws and is this unconstitutional in violation of Article I, Section 10, Paragraph 1 of the U.S. Constitution and a conspiracy against Father's rights?

V.    Are the statutes TCA 36-6-106, TCA 36-6-223, TCA 39-13-306, TCA 36-6-108, TCA 36-5, TCA 36-5-104, 18 U.S.C. 228, No Fault Divorce, UCCJA, UCCJEA, UIFSA and all legislation proceeding from the NCCUSL unconstitutional not only for being legislated by the unconstitutional confederation of States the NCCUSL but also for being overly vague and lacking equal protection?

## III.    Analysis

To begin, when reviewing a case on appeal, the appellate courts rely upon the record which sets forth the facts established as evidence in the trial court. *State Dep't of Children's Servs. v. Owens*, 129 S.W.3d 50, 56 (Tenn. 2004) (citing Tenn. R. App. P. 13(c)). In this case, the record of what transpired in the trial court is limited due to the lack of a transcript or statement of the evidence.[2] The record on appeal in this case is therefore confined to what is referred to as the technical record. Pro se litigants are entitled to fair and equal treatment, but they are not excused from complying with the applicable substantive and procedural law. *Paehler v. Union Planters Nat. Bank*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). Therefore, in the absence of a transcript or statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found in

---

[2]The transcripts and statement of evidence prepared by Mr. Jolly were included in the record received by this court. However, because the trial court declined to approve the transcripts or the statement of evidence, we can not consider them as part of the record on appeal.

favor of Appellee. *Leek v. Powell*, 884 S.W.2d 119 (Tenn. Ct. App. 1996); *Lyon v. Lyon*, 765 S.W.2d 75 (Tenn. Ct. App. 1988).

The trial court's decision giving full faith and credit to the Kansas divorce decree is a question of law. As such, our review of the trial court order is *de novo* upon the record with no presumption of correctness accompanying the trial court's conclusions of law. *See* Tenn. R. App. P. 13(d); *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998); *Sims v. Stewart*, 973 S.W.2d 597, 599-600 (Tenn. Ct. App. 1998).

Mr. Jolly's first issue argues that his due process rights were violated because "[(1)] ... [the trial court denied] the right to a hearing before making a decision on jurisdiction (TCA 36-6-213(b)), [thus] denying [a] due process hearing and [(2)] [the trial court] ... illegally and unlawfully allow[ed] the suit to be bifurcated into another case ... contrary to *res judicata*." The most basic principle underpinning procedural due process is that individuals must be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner. *Shaw v. Shelby County Gov't*, 189 S.W.3d 232, 240 (Tenn. Ct. App. 2005) (quoting *Case v. Shelby County Civil Serv. Merit Bd.*, 98 S.W.3d 167, 172 (Tenn. Ct. App. 2002); *see also Manning v. City of Lebanon*, 124 S.W.3d 562, 566 (Tenn. Ct. App. 2003).

Again, our review of this case is limited to the record that is before us. *See Owens*, 129 S.W.3d at 56. In this case, there is nothing in the record indicating that any issues were bifurcated while on remand to the trial court. Further, nothing in the record indicates that the trial court denied Mr. Jolly an opportunity to be heard on the issues which were the subject of the remand from the Supreme Court: (1) to provide proper notice to Mr. Jolly under UIFSA, and (2) to provide an opportunity for Mr. Jolly to contest the Kansas order's validity. Mr. Jolly was granted a hearing on June 12, 2004, in which he was provided an opportunity to present his defenses. The trial court determined that the Kansas divorce decree should be given full faith and credit. There is nothing in the record to suggest that the trial court denied Mr. Jolly of his right to due process in reaching that decision.

In his second issue, Mr. Jolly argues that the Kansas divorce decree should not be given full faith and credit due to lack of personal jurisdiction and lack of subject matter jurisdiction. Mr. Jolly raised these arguments in the trial court. Because the record lacks a statement of evidence or transcript of the proceedings, it is difficult to determine precisely what transpired in the trial court regarding these issues. As previously stated, in the absence of a transcript or statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found in favor of Appellee. *Leek* , 884 S.W.2d 119; *Lyon*, 765 S.W.2d 75. After hearing arguments in this case, the trial court determined that the Kansas court had properly exercised jurisdiction and that the Kansas decree was entitled to full faith and credit in Tennessee. Based on the record that is before this Court, we conclude that the trial court was correct in determining that the Kansas court properly exercised jurisdiction over Mr. Jolly.

The remainder of the issues Mr. Jolly raises on appeal deal with his challenge to the constitutionality of several statutes. On remand to the trial court, Mr. Jolly challenged the

constitutionality of several statutes, including T.C.A. §§ 36-6-106; 36-6-108; 36-6-223; 39-13-306; 4-9-101 through 4-9-104; 36-5; 36-5-104; 36-6-201 through 36-6-511; 36-4-101(14); and 36-5-201 *et seq.* Additionally, Mr. Jolly challenged the constitutionality of 18 U.S.C. § 228; 28 U.S.C. § 1738A; and all legislation proceeding from the National Conference of Commissioner on Uniform State Laws. With the exception of the Uniform Interstate Family Support Act (UIFSA), T.C.A. § 36-5-2001 *et seq.*, none of the challenged statutes have ever been applied to Mr. Jolly in this case. The issues which have been litigated in this case are the enforcement of Mr. Jolly's child support obligations under the Kansas divorce decree and the division of the parties' real property located in McNairy County, Tennessee. Neither issue involves any of the challenged statutes, except for UIFSA.

In *Jolly v. Jolly*, 130 S.W.3d 783 (Tenn. 2004), our Supreme Court remanded this case to the trial court to ensure that the registration and notice procedures set forth in UIFSA are followed and to consider the defenses raised by Mr. Jolly before determining whether the Kansas divorce decree should be enforced. *Id.* at 788. The Supreme Court stressed that the case should be remanded in order to provide proper notice to Mr. Jolly under UIFSA and in order to provide an opportunity for Mr. Jolly to contest the Kansas order's validity. *Id.* Therefore, the subject of the remand to the trial court was the application of UIFSA; none of the other challenged statutes were at issue.

> It is well settled that Tennessee courts do not issue advisory opinions on constitutional or other issues not before the court as justiciable cases or controversies. The doctrine of mootness has been previously explained by this Court as follows:       The doctrine of justiciability prompts courts to stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights. **State ex rel. Lewis v. State**, 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977). Thus, our courts will not render advisory opinions, *Super Flea Mkt. v. Olsen*, 677 S.W.2d 449, 451 (Tenn.1984); *Parks v. Alexander*, 608 S.W.2d 881, 892 (Tenn. Ct. App.1980), or decide abstract legal questions. *State ex rel. Lewis v. State*, 208 Tenn. at 538, 347 S.W.2d at 49.
>
> Cases must be justiciable not only when they are first filed but must also remain justiciable throughout the entire course of the litigation, including the appeal. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); *Kremens v. Bartley*, 431 U.S. 119, 128-29, 97 S.Ct. 1709, 1715 (1977); 13A Charles A. Wright et al., *Federal Practice and Procedure* §§ 3533, 3533.10 (2d ed. 1984) ("Federal Practice and Procedure"). The concept of mootness deals with the circumstances that render a case no longer justiciable. *Davis v.*

> *McClaran,* App. No. 01-A-01-9304-CH-00164, slip op. at 2, 19 T.A.M. 1-3, 1993 WL 523667 (Tenn. Ct. App. Dec. 10, 1993), *perm. app. granted* (Tenn. Mar. 28, 1994) ("[m]ootness is a doctrine of justiciability"); Federal Practice and Procedure § 3533, at 211.

*McIntyre v. Traughber,* 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994).  Therefore, we will not address the constitutionality of T.C.A. §§ 36-6-106; T.C.A. § 36-6-108; T.C.A. § 36-6-223; T.C.A. § 39-13-306; T.C.A. §§ 4-9-101 through 4-9-104; T.C.A. § 36-5; T.C.A. § 36-5-104; T.C.A. §§ 36-6-201 through 36-6-511; T.C.A. § 36-4-101(14); T.C.A. § 36-5-201 *et seq.*; 18 U.S.C. § 228; 28 U.S.C. § 1738A; and all legislation proceeding from the National Conference of Commissioner on Uniform State Laws.

In *Jolly v. Jolly*, 130 S.W.3d at 788, our Supreme Court remanded this case to "ensure that the registration and notice procedures set forth in [the Uniform Interstate Family Support Act] are followed and ... [to] consider the defenses raised by [Appellant] before determining whether the Kansas court's decree should be enforced." *Id.*  On remand and on appeal, Mr. Jolly challenges the constitutionality, under Article I, Section 10, Paragraph 1 of the United States Constitution, of the UIFSA, T.C.A. § 36-5-2001 *et seq.* "for being legislated by the unconstitutional confederation of the states of the [National Conference of Commissioners on Uniform State Laws]."  Mr. Jolly contends that the National Conference of Commissioners on Uniform State Laws ("NCCUSL") is an "illegal confederation of states as was the Southern Confederacy, and cannot be recognized as having any legal existence."

T.C.A. § 4-9-101 creates a board of commissioners "for the promotion of uniformity of legislation in the United States.  The board of commissioners created by the statute are responsible for determining subjects upon which uniform legislation among the states is desirable but which are outside the jurisdiction of the congress of the United States.  T.C.A. 4-9-102.  The board of commissioners then work with commissioners from other states to draft legislation to be submitted for adoption by the individual states' legislatures.  Mr. Jolly admits in his brief that the commissioners to the NCCUSL only "advocate the adoption of uniform and model acts in their home states."  The board of commissioners may only *recommend* a course of action and have no authority with the legislature to pass new legislation.

The utilization of a board of commissioners to the NCCUSL under T.C.A. 4-9-101 through 4-9-104 is not prohibited by the United States Constitution.  The only agreements between states that require the consent of the United States Congress are those which "encroach upon or interfere with the just supremacy of the United States." *Cuyler v. Adams*, 449 U.S. 433, 434, 101 S.Ct. 703, 704 (1981) (quoting *Virginia v. Tennessee*, 148 U.S. 503, 518, 13 S.Ct. 728, 734 (1893)).  T.C.A. 4-9-101(1) specifically limits the authority of the board of commissioners in Tennessee to matters "outside the jurisdiction of the congress of the United States."  Therefore, the board of commissioners and their association with the NCCUSL is not an illegal or unconstitutional confederation.

Mr. Jolly further argues that the UIFSA, T.C.A. § 36-5-2001 *et seq.* is unconstitutionally vague. A law can be found unconstitutionally vague if "it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." ***City of Chicago v. Morales***, 527 U.S. 41, 56, 119 S.Ct. 1849, 1859 (1999) (citing ***Giaccio v. Pennsylvania***, 382 U.S. 399, 402-03, 86 S.Ct. 518, 521(1966)). Statutes can violate the vagueness doctrine in one of two ways. ***Morales***, 527 U.S. 56. First, a statute may violate the vagueness doctrine if it fails to provide the type of notice that will enable ordinary people to understand the type of conduct that it prohibits. ***Id.*** Second, a statute may violate the vagueness doctrine if it authorizes and even encourages arbitrary and discriminatory enforcement. ***Id.***

The UIFSA does not meet either of the two criteria for violating the vagueness doctrine. First, the UIFSA sections clearly set forth the bases and procedure for establishing jurisdiction over a nonresident "[i]n a proceeding to establish, enforce, or modify a support order or to determine parentage." T.C.A. § 36-5-2201. Ordinary people can easily ascertain the procedures and bases set forth in the statute. Further, the UIFSA does not authorize or encourage arbitrary and discriminatory enforcement in any fashion. Therefore, Mr. Jolly's argument that the UIFSA is unconstitutionally vague is without merit.

Finally, Mr. Jolly aruges that the UIFSA, T.C.A. § 36-5-2001 *et seq.*, is unconsitutional based on equal protection. Mr. Jolly argues that UIFSA is unconstitutional because it treats noncustodial parents different from custodial parents. This argument appears to be based on T.C.A. § 36-5-2101(4), which defines "home state." The statute defines "home state" as:

> ... the state in which a child lived with a parent or a person acting as parent for at least six (6) consecutive months immediately preceding the time of filing of a petition or comparable pleading for support and, if a child is less than six (6) months old, the state in which the child lived from birth with any of them. A period of temporary absence of any of them is counted as part of the six-month or other period.

T. C. A. § 36-5-2101(4).

The Tennessee Supreme Court has recently set forth the appropriate legal standard for resolving equal protection in ***Gallaher v. Elam***, 104 S.W.3d 455 (Tenn. 2003). The ***Gallaher*** court stated:

> We have recognized that both the United States and Tennessee Constitutions guarantee citizens the equal protection of the laws. *See, e.g.,* ***Robinson***, 29 S.W.3d at 480. We have also recognized that article I, section 8 and article XI, section 8 of the Tennessee Constitution confer "essentially the same protection" as the Fourteenth Amendment to the United States Constitution, despite the historical and linguistic differences between the equal

protection provisions. *State v. Tester,* 879 S.W.2d 823, 827 (Tenn.1994) (quoting *Tenn. Small Sch. Sys. v. McWherter,* 851 S.W.2d 139, 152 (Tenn.1993)). Consequently, this Court has adopted an analytical framework similar to that used by the United States Supreme Court in analyzing equal protection challenges. *See Robinson,* 29 S.W.3d at 481. Under this framework, one of three standards of scrutiny applies, depending upon the nature of the right asserted or the class of persons affected: (1) strict scrutiny; (2) heightened scrutiny; or (3) reduced scrutiny, applying the rational basis test. *See id.* Strict scrutiny applies when the classification at issue: (1) operates to the peculiar disadvantage of a suspect class; or (2) interferes with the exercise of a fundamental right. *See id.*

\* \* \*

A suspect class is one that has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian process." (Citations omitted).

*Id.* at 460-61.

Mr. Jolly argues that parents "who may either be unaware of the provisions and implications thereof, may not be able to act due to children being removed elsewhere or to religious or spiritual people like [myself] who are conscientiously opposed to commencing legal proceedings against their spouse" constitute a suspect class which would subject the UIFSA to strict scrutiny. However, Mr. Jolly's argument is without merit, and such a group does not create a suspect class. The UIFSA provision does not interfere with the exercise of a fundamental right such that strict scrutiny would apply in this case.

Further, Mr. Jolly's equal protection challenge is not entitled to heightened scrutiny. "Heightened scrutiny applies only to legislative classifications involving a quasi-suspect class, such as gender or illegitimacy." *Gallaher v. Elam*, 104 S.W.3d at 461. Mr. Jolly's argument that parents "who may either be unaware of the provisions and implications thereof, may not be able to act due to children being removed elsewhere or to religious or spiritual people like [myself] who are conscientiously opposed to commencing legal proceedings against their spouse" create such a quasi-suspect class is without merit. Therefore, a rational basis test must be utilized in analyzing Mr. Jolly's equal protection challenge.

The *Gallaher* court also set forth the standard for the rational basis test. The court stated:

-11-

The equal protection provisions of the federal and state constitutions demand that persons similarly situated be treated alike. *See Tenn. Small Sch. Sys. v. McWherter,* 851 S.W.2d 139, 153 (Tenn.1993). When applying the rational basis test, we have observed that state legislatures have the initial discretion to determine what is "different" and what is "the same" and that they are given considerable latitude in making those determinations. *See Robinson,* 29 S.W.3d at 480 (citing *Tenn. Small Sch. Sys.,* 851 S.W.2d at 153). Our inquiry into legislative choice usually is limited to whether the challenged classifications have a reasonable relationship to a legitimate state interest. *See id.* We have held that under the rational basis test, a statute may discriminate in favor of a certain class, as long as the discrimination is founded upon a reasonable distinction or difference in state policy. *See Castlewood, Inc. v. Anderson County,* 969 S.W.2d 908, 910 (Tenn.1998).

*Gallaher*, 104 S.W.3d at 461.

T.C.A. § 36-5-2101(4) treats all parents and children who are subject to child custody proceedings equally. The domicile of the child, not the parent, is determinative of jurisdiction. The legislature has a rational, legitimate interest in requiring that the domicile of the child, rather than the parent, be determinative of jurisdiction in this proceedings, as that jurisdiction has the closest ties to the child at that time. Therefore, Mr. Jolly's argument that this provision of the UIFSA is unconstitutional under the equal protection doctrine is without merit.

## IV.    Conclusion

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the appellant, Richard John Jolly, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.