# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 7, 2014 Session

## STATE OF TENNESSEE v. MELVIN BROWN

**Interlocutory Appeal from the Criminal Court for Shelby County**
**No. 13-00735    W. Mark Ward, Judge**

---

**No. W2014-00162-CCA-R9-CD  - Filed April 30, 2015**

---

The Defendant, Melvin Brown, was indicted by the Shelby County Grand Jury for driving under the influence ("DUI"); DUI with blood alcohol more than .20%; violation of the implied consent law; reckless driving; and driving with a license revoked, suspended, or cancelled.  The Defendant refused law enforcement's request to submit to a blood test to determine his blood alcohol content, and his blood was taken, without a warrant and over his objections, pursuant to Tennessee Code Annotated section 55-10-406(f)(1) (Supp. 2011). The trial court subsequently granted the Defendant's motion to suppress evidence of his blood alcohol content.  In this interlocutory appeal, the State challenges the trial court's conclusion that the Code section 55-10-406(f)(1) is unconstitutional and that no exception to the warrant requirement existed to justify the warrantless blood draw.  Upon review, we conclude that Code section 55-10-406(f)(1) does not dispense with the warrant requirement and reverse the portion of the trial court's judgment declaring the statute unconstitutional. Because no exception to the warrant requirement existed, however, we affirm the order of the trial court suppressing the results of the Defendant's blood alcohol content.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Reversed in Part; Affirmed in Part**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. TIMOTHY L. EASTER, J.,concurred in results only.

Claiborne H. Ferguson, Memphis, Tennessee (on appeal), and Varonica R. Cooper, Memphis, Tennessee (at trial), for the Defendant-Appellant, Melvin Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

At the September 12, 2013 suppression hearing, Officer Christopher Draper of the Memphis Police Department ("MPD") testified that he responded to the scene of a three-car accident on December 6, 2011, around 9:00 p.m. The Defendant was suspected of DUI, and Officer Draper sat with the Defendant for approximately 30 minutes until certified DUI Officer Casey Kirby arrived on the scene. Officer Draper assisted Officer Kirby with "a little bit of the paperwork" in his DUI investigation, including filling out the "Standard Field Sobriety Form." Officer Draper noted in his report that the Defendant had "obvious" signs of alcohol impairment, including a strong odor of alcohol, watery eyes, and slurred speech. Officer Draper recalled that the accident occurred in a "[v]ery busy intersection" and required vehicles to be towed.

On cross-examination, Officer Draper testified that there were two other officers at the scene investigating the accident while he and Officer Kirby investigated the Defendant for DUI. Officer Draper agreed that the Defendant was not injured in the accident or transported to the hospital and that this DUI stop was "pretty much standard routine." He estimated that the Defendant remained at the scene for an hour and a half before being transported to the police station.

Officer Casey Kirby, a trained DUI officer with the MPD DUI Unit, testified that he was called to the scene after officers there requested a DUI officer. Upon his arrival, Officer Kirby and Officer Draper took the Defendant to a parking lot adjacent to the accident. He observed that the Defendant had a strong odor of alcohol, bloodshot and watery eyes, slurred speech, and a "slow reaction" time. He recalled that the Defendant was "swaying and staggering," but because the Defendant complained of leg pain, Officer Kirby did not ask the Defendant to perform a turn and walk test or one leg stand test. Officer Kirby advised the Defendant of the implied consent law and requested that the Defendant submit to a breath test. The Defendant refused to submit to a test. Because a third party was injured in the accident, Officer Kirby determined that the Defendant was subject to a mandatory blood draw pursuant to Tennessee Code Annotated section 55-10-406(f)(1) (Supp. 2011). He explained, "Since [the Defendant] was involved in an accident where there were injuries to a third party . . . the State law at that time advised me that I'm able to go ahead and take . . . a mandatory blood draw if he refuses to a BAC test." Officer Kirby informed the Defendant that the blood test was mandatory, and the Defendant continued to refuse the test. Officer Kirby transported the Defendant to the police station where a nurse met them and took a blood sample from the Defendant.

Officer Kirby testified that at the time, obtaining warrants for blood draws was not MPD's "standard operation procedure," and he understood the law to be that warrants were

not required for mandatory blood draws. He testified that he had recently started obtaining warrants for all blood draws. It typically takes about two hours to get the warrant and an additional thirty minutes for a nurse to come to the station and take a blood sample. On cross-examination, he agreed that this case was "a pretty routine DUI stop[.]" He also agreed that he could obtain a warrant at any hour of the day.

Following the hearing, the trial court found that exigent circumstances did not exist to justify an exception to the warrant requirement and questioned the constitutionality of the statute. On November 4, 2014, the trial court entered an order granting the Defendant's motion to suppress, which sets out its findings and conclusions, in relevant part, as follows:

> [T]he State presented the testimony of Memphis Police Officers Christopher Draper and Casey Kirby. Officer Kirby testified that he responded to the scene of the motor vehicle accident in his capacity as a DUI Detection Officer. At the request of the arresting officer, Officer Kirby investigated the Defendant for suspicion of driving under the influence. Subsequently, Officer Kirby read the Defendant the Tennessee Implied Consent Law at which time the Defendant refused to submit to a breath test.
>
> Thereafter, Officer Kirby testified that he made the decision to draw blood pursuant to Tennessee Code Annotated [section] 55-10-406 upon his reasonable, articulable suspicion that the Defendant was involved in a motor vehicle accident with injuries to a third party while said Defendant was under the influence of alcohol.
>
> Upon review of the evidence, this Court concludes that exigent circumstances were not presented that would have prevented the officers from getting a warrant for the blood draw from the Defendant pursuant to Schmerber v. California, 384 U.S. 757 (1996). Instead, the Court finds that the officers proceeded to make a warrantless blood draw while acting pursuant to the dictates of [Tennessee Code Annotated section] 55-10-406, which allows for a mandatory blood draw in cases where there is a motor vehicle accident with injuries to a third party.[1]

---

[1] The trial court's order does not explicitly rule on the constitutionality of the statute. However, in a hearing prior to the drafting of the order by the prosecutor, the trial court expressed its conclusion that the statute was unconstitutional. The court reasoned,

> [I]mplicit in the ruling [granting the Defendant's suppression motion] is that the [Tennessee Code Annotated section 55-10-406(f)(1)] is unconstitutional, but there are some good

(continued...)

The State applied for an interlocutory appeal, which the trial court approved and this court granted.

## ANALYSIS

On appeal, the State argues that the trial court erred in granting the Defendant's motion to suppress. The State avers that the warrantless blood draw was justified by two separate exceptions to the warrant requirement: consent and exigent circumstances. Additionally, the State argues that trial court improperly concluded that the statute is unconstitutional. The Defendant responds that the trial court properly suppressed the results of his blood test.

It is well-established that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The Tennessee Supreme Court explained this standard in Odom:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Id. However, this court's review of a trial court's application of the law to the facts is de novo with no presumption of correctness. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); (citing State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. These constitutional protections are designed to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998) (quoting Camara v. Mun. Court, 387 U.S. 523, 528 (1967)). "The touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991). "[U]nder both the federal and

---

[1](...continued)

arguments to be made that it might not be, but I decided to err on the favor of ruling it unconstitutional, until we get a ruling to the contrary.

state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629 (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996)). The State bears the burden to establish by a preponderance of the evidence that a warrantless search or seizure is constitutional. See, e.g., State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

There is no question that the drawing of the Defendant's blood constituted a search implicating Fourth Amendment protections. "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013) (quoting Winston v. Lee, 470 U.S. 753, 760 (1985)); see also Skinner v. Railway Labor Executives' Ass'n., 489 U.S. 602 (1989). Thus, "the importance of requiring authorization by a 'neutral and detached magistrate' before allowing a law enforcement officer to 'invade another's body in search of evidence of guilt is indisputable and great.'" McNeely, 133 S. Ct. at 1558 (quoting Schmerber v. California, 384 U.S. 757, 770 (1966)). As noted, however, the warrant requirement is subject to exceptions. These recognized exceptions include "search incident to arrest, plain view, stop and frisk, hot pursuit, search under exigent circumstances, and . . . . consent to search." State v. Charles A. Kennedy, No. M2013-02207-CCA-R9-CD, 2014 WL 4953586, at *6 (Tenn. Crim. App. Oct. 3, 2014) (quoting State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005)). At issue here are consent to search and exigent circumstances.

Because we "do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties," Waters v. Farr, 291 S.W.3d 873, 882 (Tenn. 2009) (quoting State v. Taylor, 70 S.W.3d 717, 720 (Tenn. 2002)), we first consider whether the warrantless blood draw in this case was justified under either the consent exception or the exigent circumstances exception to the warrant requirement.

**I. Consent.** The State argues that the Defendant, by virtue of Tennessee's implied consent law, consented to the warrantless blood draw by driving on the roadways in Tennessee. Under the implied consent statute, anyone who drives a car in this state "is deemed to have given consent to a test or tests for the purposes of determining the alcoholic content of that person's blood[.]" T.C.A. § 55-10-406(a) (Supp. 2011). The statute further provides that a driver may generally refuse to consent to such a test and be subject to a violation of the implied consent law. See id. § 55-10-406(a)(4)(A).[2] However, section (f)

---

[2] The implied consent statute has since been revised, and this provision is now codified at Tennessee

(continued...)

delineates exceptions to the driver's statutory right to refuse consent, which includes where law enforcement officers have probable cause to believe that the driver was driving under the influence and has been involved in an accident causing injury or death of another. See id. § 55-10-406(f)(1).[3] Based on these provisions, the State avers that because the arresting officer had probable cause to believe that the Defendant had been driving under the influence and that he was involved in an accident causing injury to a third party, the Defendant had given irrevocable consent, sufficient for Fourth Amendment purposes, to submit to a blood test.

Despite these arguments on appeal, the State conceded at the suppression hearing that "there was no consent in this case" and relied solely on exigent circumstances to justify the search. As such, this issue has been waived. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); see also, e.g., State v. Maddin, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005) ("When an issue is raised for the first time on appeal, it is typically waived."); Simpson v. Frontier Community Credit Union, 810 S.W.2d 147, 153 (Tenn. 1991) ("[I]ssues not raised in the trial court cannot be raised for the first time on appeal.") (citations omitted); Charles A. Kennedy, 2014 WL 4953586, at *10 ("Because the State failed to present this argument in the trial court, the trial court did not have the opportunity to pass on it, and we will not consider it."). Accordingly, we decline to address this issue.

**II. Exigent Circumstances.** The State also argues that the warrantless blood draw in this case was justified by exigent circumstances. As noted, "[o]ne well-recognized exception [to the warrant requirement] . . . applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." McNeely, 133 S. Ct. at 1558 (quoting Kentucky v. King, 131 S. Ct. 1849, 1856 (2011)). "A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search," including, as relevant here, the prevention of "the imminent destruction of evidence." Id. (citations omitted). "To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of the circumstances." Id. at 1159 (citing Brigham City v. Stuart, 547 U.S. 398, 406 (2006); Illinois v. McArthur, 531 U.S. 326, 331 (2001); Richards v. Wisconsin, 520 U.S. 385, 391-96 (1997); Cupp v. Murphy, 412 U.S. 291, 296 (1973)).

---

[2](...continued)
Code Annotated section 55-10-406(d)(1) (Supp. 2013).

[3] Following the revision of the implied consent statute, this provision is now codified at Tennessee Code Annotated section 55-10-406(d)(5)(A) (Supp. 2013).

The United States Supreme Court recently affirmed the totality of the circumstances approach and its application in the context of drunk-driving cases. McNeely, 133 S. Ct. at 1552. Prior to McNeely, many courts, including this one, had concluded that the natural dissipation of alcohol in the bloodstream created exigent circumstances sufficient to dispose of the warrant requirement in every drunk-driving case. See, e.g., State v. Humphreys 70 S.W.3d 752, 760-61 (Tenn. Crim. App. 2001) ("Based upon the fact that evidence of blood alcohol content begins to diminish shortly after drinking stops, a compulsory breath or blood test, taken with or without the consent of the donor, falls within the exigent circumstances exception to the warrant requirement."); State v. Michael A. Janosky, M1999-02574-CCA-R3-CD, 2000 WL 1449367, at *5 (Tenn. Crim. App. Sept. 29, 2000) (relying in part on "the exigent circumstances established by the nature of the evidence in cases involving intoxicated motorists" to justify a warrantless blood draw);[4] see also State v. Shriner, 751 N.W.2d 538, 545 (Minn. 2008) ("The rapid, natural dissipation of alcohol in the blood creates single-factor exigent circumstances that will justify the police taking a warrantless, nonconsensual blood draw from a defendant, provided that the police have probable cause to believe that the defendant committed the criminal vehicular operation."). McNeely rejected this conclusion and held, "consistent with general Fourth Amendment principles, that exigency in this context must be determined case by case based on the totality of the circumstances." 133 S. Ct. at 1556.

In reaching its conclusion, the McNeely Court relied on Schmerber v. California, 384 U.S. 757 (1966), a case involving a warrantless blood draw of a defendant suspected of driving under the influence. In Schmerber, the defendant was involved in a car accident and was arrested while at the hospital receiving treatment for injuries sustained in that accident. Id. at 758. While at the hospital, the officer ordered that a sample of the defendant's blood be taken over the objections of the defendant. Id. at 759. In upholding the warrantless blood draw, the Court considered the totality of the circumstances, including the fact that alcohol dissipates from the body shortly after drinking stops, and reasoned that "[t]he officer might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence[.]" Id. at 770 (internal quotation marks and citations omitted). The Court noted that "[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." Id. at 770-71. McNeely reaffirmed this conclusion and reiterated that Schmerber's "special facts" justified the warrantless action of police in that case; however, "[i]n those drunk-driving investigations where police officers can reasonably

---

[4] In both State v. Humphreys, 70 S.W.3d 752, and State v. Michael A. Janosky, 2000 WL 1449367, the warrantless blood draws were also upheld under the consent exception to the warrant requirement because the defendant in each case consented to the warrantless blood draw.

obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do." McNeely, 133 S. Ct. at 1560-61.

In the instant case, the trial court concluded that the State failed to establish that exigent circumstances existed to justify the warrantless blood draw. Based on Schmerber and McNeely, we agree with this conclusion. As noted by the trial court, Officer Kirby was called to the scene in his capacity as a certified DUI officer specifically to investigate the Defendant for DUI. He arrived at the scene within twenty minutes and was assisted in his investigation by Officer Draper. Although the incident involved a three-car accident, both Officers Kirby and Draper described this DUI investigation as "routine." Officer Kirby did not participate in the investigation of the accident or cleaning up the scene. Further, the Defendant was not injured in the accident or transported to the hospital for any reason following the accident. He remained on the scene for approximately an hour and a half while Officers Kirby and Draper investigated him for DUI. After being transported to the police station, the Defendant waited another thirty minutes for a nurse to arrive and draw his blood. While Officer Kirby testified that it usually takes him two and half hours to obtain a warrant, he failed to explain why he was unable to obtain a warrant during the nearly two and a half hour delay between the incident and the blood draw in the present case. Indeed, Officer Kirby did not identify any factors that would have delayed the process of obtaining a warrant; rather, as the trial court concluded, the officers relied solely on their belief that no warrant was required to conduct a mandatory blood draw pursuant to Tennessee Code Annotated section 55-10-406(f)(1).[5] See McNeely, 133 S. Ct. at 1567 (noting that the arresting officer "did not identify any other factors that would suggest he faced an emergency or usual delay in securing a warrant," and did not seek a warrant "only because he believed it was not legally necessary to obtain a warrant"). Based on these facts, we conclude that exigent circumstances did not exist to justify the warrantless search.[6]

---

[5] The State argues that the trial court incorrectly concluded that exigent circumstances did not exist because the officers testified that they relied on the statute in drawing the Defendant's blood. While the subjective motivations of the police are "irrelevant" for Fourth Amendment purposes, State v. Meeks, 262 S.W.3d 710, 724 (Tenn. 2008), the officers' testimony in the present case does not present any facts that establish, from an objective perspective, the existence of exigent circumstances. Instead, their testimony establishes that they failed to obtain a warrant in this "routine" DUI stop simply because they believed a warrant was not legally required.

[6] The State avers that even if no exceptions exist to justify the warrantless search, suppression of the evidence in this case will serve no legitimate Fourth Amendment purposes because Officer Kirby believed he was acting within the confines of the law when he ordered the warrantless blood draw. The State asserts, therefore, that the evidence should not be excluded. We note, however, that Tennessee courts have yet to recognize an officer's good faith as an exception to the exclusionary rule. See, e.g., State v. Carter, 16

(continued...)

**III. Constitutionality of Tennessee Code Annotated section 55-10-406.** Finally, we turn to address the trial court's conclusion that Tennessee Code Annotated section 55-10-406(f)(1) is unconstitutional. At the suppression hearing, the Defendant argued that McNeely invalidates the mandatory blood draw provisions of Tennessee Code Annotated section 55-10-406(f) because they allow officers to conduct warrantless blood draws without a valid exception to the warrant requirement. The trial court agreed and concluded that the statute is unconstitutional in light of McNeely. The State asserts that because the statute does not explicitly dispense with the warrant requirement, it is constitutional.

"In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003) (citing State v. Robinson, 29 S.W.3d 476, 479 (Tenn. 2000); Riggs v. Burson, 941 S.W.2d 44, 51 (Tenn. 1997)). Moreover, a reviewing court has "a duty to adopt a construction which will sustain the statute and avoid constitutional conflict if at all possible[.]" State v. Taylor, 70 S.W.3d 717, 721 (Tenn. 2002). "[T]his duty requires courts to indulge in every presumption and resolve every doubt in favor of the statute's constitutionality." Id. Because of the "strong presumption that acts of the General Assembly are constitutional, the party attacking the constitutionality of a statute 'must bear a heavy burden in establishing some constitutional infirmity in the Act in question.'" Gallaher, 104 S.W.3d 459-60 (quoting West v. Tenn. Hous. Dev. Agency, 512 S.W.2d 275, 279 (Tenn. 1974)).

"'[T]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope." Houghton v. Aramark Edu. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). "Every word in a statute 'is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature." Waters v. Farr, 291 S.W.3d 873, 881 (Tenn. 2009) (quoting In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005)). "When the statutory language is clear and unambiguous, we apply its plain meaning without complicating the task." Id. (citing Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004)). "When a statute is ambiguous, however, we may reference the broader statutory scheme, the history of the legislation, or other sources to discern its meaning." Id. (citing Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008)).

---

[6](...continued) S.W.3d 762, 768 n. 8 (Tenn. 2000) ("[T]his Court has yet to adopt the [good faith] exception."); State v. Bearden, 326 S.W.3d 184, 188 (Tenn. Crim. App. 2010) ("Tennessee, however, has not adopted this 'good faith exception.'"). We likewise decline to recognize such an exception in this case.

At the time of the Defendant's arrest, the mandatory blood draw provision of Tennessee Code Annotated section 55-10-406 at issue in this case read as follows:

> If a law enforcement officer has probable cause to believe that the driver of a motor vehicle involved in an accident resulting in the injury or death of another has committed a violation of § 39-13-213(a)(2) [vehicular homicide as a proximate result of the driver's intoxication], § 39-13-218 [aggravated vehicular homicide as a result of the driver's intoxication], or § 55-10-401 [driving under the influence], the officer <u>shall</u> cause the driver to be tested for the purpose of determining the alcohol or drug content of the driver's blood. The test shall be performed in accordance with the procedure set forth in this section and shall be performed regardless of whether the driver does or does not consent to the test[.]

T.C.A. § 55-10-406(f)(1) (Supp. 2011) (emphasis added). Officer Kirby believed that the statute operated as an exception to the warrant requirement, and the trial court ostensibly agreed and ruled the statute unconstitutional. The State legislature, of course, cannot circumvent the requirements of the state and federal constitutions by statute.

Recently, a panel of this court considered the constitutionality of Code section 55-10-406(f)(2), another mandatory blood draw provision, and concluded that the statute did not dispense with the warrant requirement. <u>Charles A. Kennedy</u>, 2014 WL 4953586. There, the court reasoned that the General Assembly "knows the 'state of the law,'" <u>id.</u>, at *12 (citing <u>Lee Med., Inc. v. Beecher</u>, 312 S.W.3d 515, 527 (Tenn. 2010)), and thus presumably "was aware that it could not circumvent Fourth Amendment protections by legislative enactment." <u>Id.</u> Consequently, the court concluded that "the legislature did not intend for Code section 55-10-406(f)(2) to operate as a blanket exception to the warrant requirement." <u>Id.</u> The court emphasized,

> [T]he mandatory blood draw statute at issue here does not address whether a police officer must obtain a search warrant before causing a suspect's blood to be drawn. Thus, the statute is open to the interpretation that a warrant is required before a mandatory blood draw when a suspect refuses to consent to a the draw. When (1) a statute can legitimately be construed in various ways, and (2) one of those constructions presents a constitutional conflict, then it is our duty to adopt a construction which will sustain the statute and avoid [that] constitutional conflict, if its recitations permit such a construction. We conclude that Code section 55-10-406(f)(2) does not dispense with the warrant requirement.

Id. at *13 (internal quotation marks and citations omitted); see also State v. James Dean Wells, No. M2013-01145-CCA-R9-CD, 2014 WL 4977356, at *18 (Tenn. Crim. App. Oct. 6, 2014) (concluding that "[Code section 55-10-406(f)(2)], by mandating the blood draw, did not require [the officer] to draw the defendant's blood without first obtaining a warrant").

We agree with this reasoning and likewise conclude that Code section 55-10-406(f)(1) does not dispense with the warrant requirement. Like subsection (f)(2), subsection (f)(1) makes no mention of the necessity of a warrant. In accordance with previous panels of this court, we decline to read into the statute's silence a dispensation of the warrant requirement. Accordingly, we conclude that the statute is not unconstitutional and reverse the trial court's judgment insofar as it declared otherwise.

## CONCLUSION

Because no exception to the warrant requirement existed, we affirm the judgment of the trial court suppressing the results of the Defendant's blood alcohol content; however, because the trial court erred in declaring Code section 55-10-406(f)(1) unconstitutional, we reverse that portion of the trial court's judgment.

_____
CAMILLE R. McMULLEN, JUDGE